Earnest C. **HARRIS**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 21685.

United States Court of Appeals Fifth Circuit.

Feb. 9, 1966.

Rehearing Denied April 7, 1966.

Frank D. Coffey, Richard E. Johnson, Fort Worth, Tex., for appellant.

Robert S. Travis, Asst. U. S. Atty., Fort Worth, Tex., Barefoot Sanders, U. S. Atty., William L. Hughes, Jr., Asst. U. S. Atty., for appellee.

Before RIVES, BROWN and MOORE,* Circuit Judges.

MOORE, Circuit Judge:

Appellant appeals from a judgment of conviction upon a jury trial in the United States District Court for the Northern District of Texas of wilfully filing fraudulent income tax returns for the years 1957, 1958, 1959, and 1960 in violation of Section 7201 of the Internal Revenue Code of 1954, 26 U.S.C. § 7201.[1] During those years, appellant was engaged in the coin machine vending business and placed various types of coin operated machines in bars and taverns, splitting the proceeds equally with the location operators. Appellant's agents collected the proceeds from the machines and made out duplicate collection tickets (one for appellant and one for the location operator) which, if correctly prepared, indicated the location, the date of collection, the amount taken from the machine, and the amount of the proceeds received by each party. The agents then transferred the collection tickets and the proceeds received to an office employee at appellant's business who ran an adding machine tape on both the amounts indicated on the tickets and the amounts actually received from particular locations. The amounts stated on the collection tickets as appellant's portion of the proceeds taken from the machines were posted to a general ledger from which appellant's taxable income was determined, i. e., these figures appeared on his tax returns as "gross receipts". Thereafter, the tapes, tickets, and money were turned over to appellant or his office manager. At trial, the Government attempted to prove the existence of substantial unreported income for the years 1957, 1958, 1959 and 1960 by the specific item adjustments method, on the theory that the amounts stated on many collection tickets, which formed the basis for appellant's reported income, understated the amounts actually collected by appellant.

Principal reliance was placed on the testimony of appellant's employees, location operators, and Internal Revenue Service (IRS) employees who, during a five-month investigation of appellant's records, examined approximately 14,000 collection tickets pertaining to the years 1957 through 1960. Joan Shaw, who worked for appellant from October, 1960 to April, 1961 testified that certain tickets containing code markings did not reflect all the income appellant collected. She explained that if a ticket were marked with a "2" or "½" or a check on the right hand side of the serial number, it reflected only one-half of the income actually collected; and if a ticket bore a check mark to the left of the serial number or bore the fraction "¼", the amount of income reflected by that ticket was only one-quarter of the actual amount collected from that machine. She stated that daily adding machine tapes were run, one corresponding with the amounts stated on the collection tickets and one with the actual proceeds received; that she posted the amounts stated on the collection tickets to the general ledger; and that, on occasion, appellant had remarked "wouldn't Uncle Sam like to know about this." Her testimony was supported by that of John Brown, employed by appellant as a collection agent for two months in 1960, who maintained that he was instructed to, and did, write tickets that reflected

---

* Of the Second Circuit, sitting by designation.

1. 26 U.S.C. § 7201 provides that:
   Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall * * * be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both * * *.

one-half and one-quarter of the amounts actually collected. In addition, Cecil Lancaster, who wrote tickets and collected proceeds for appellant from 1957–60, testified that the above-mentioned system for understating income was in use for the entire four-year period, and disclosed that $10 of the proceeds from pinball machines was "taken off the top" for police pay-offs and was not reflected in the amount stated on the collection tickets.[2]

Several location operators also testified on behalf of the Government. Three who had operated appellant's machines from 1957 to 1960 stated that collection tickets (they received a duplicate copy) often did not reflect the actual amount they received, and verified that $10 came "off the top" for police pay-offs. Another location operator who used appellant's machines during 1959 and 1960 described appellant's collection system in similar terms.

Specific proof of unreported income for each year was provided by IRS agent Klein who traced the income figures from the separate collection tickets to the income figures appearing on appellant's tax returns for the years in question. He testified that the examination of approximately 14,000 collection tickets covering the four-year span revealed that appellant had failed to report income in the amount of $31,633.90 in 1957, $17,576.95 in 1958, $27,315 in 1959, and $18,426.10 in 1960. These figures were based on income adjustments made by doubling the "half" tickets; quadrupling the "quarter" tickets, and adding $10 to

tickets which bore a mark indicating that the amount on the ticket had been understated by that amount which had been paid to police out of pinball machine proceeds. Agent Klein also pointed out that, if the Government found a pattern of consistency in ticket markings at a particular location, i. e., if most tickets from a location bore marks of the "half" or "quarter" variety, all tickets from the particular location were adjusted whether actually marked or not. However, unmarked tickets were not adjusted if they were from locations where no marks appeared on collection tickets, or where only a few marked tickets were found. Also, the pattern of consistency approach was not employed with respect to the $10 police pay-offs. The $10 adjustment was only made to tickets actually marked.

■ The principal issue raised on appeal is whether, viewed in the light most favorable to the Government, Curtis v. United States, 297 F.2d 639, 640 (5th Cir. 1961), the evidence is sufficient to support convictions for each of the four years in question? Appellant argues that the Government failed to prove by competent evidence that substantial amounts of income were unreported for each year involved. Although conceding that the Government did show that a faulty collection system was in use for the last two months of 1960 (Joan Shaw's testimony is not challenged),[3] appellant contends that it was unreasonable for the Government (1) to infer that such a system was in use during the preceding 10 months of 1960, or during 1957–59;

---

2. The payment of $10 to the police was indicated by placing a check mark in a box located on the left-hand side of the collection tickets.

3. Appellant does argue on appeal, however, that Joan Shaw's statement that "Mrs. Courtney [appellant's office manager] gave me my instructions on my job, she told me about the check marks on either side of the ticket and said that did not show all of their income" was inadmissible hearsay in that it was the opinion, rather than the clear-cut admission, of appellant's agent. No authority

for this alleged distinction has been presented to this court. It seems clear that the evidence was properly admitted under the well-established exception to the hearsay rule that statements made by an agent within the scope of his authority are admissible against his principal where, as here, the agency is proved independently of the hearsay statements (appellant does not contest the fact that Mrs. Courtney was his office manager). See, e. g., United States v. Miller, 246 F.2d 486, 490 (2d Cir. 1957), and cases cited n. 10. See generally Wigmore, Evidence, § 1078 (3d ed. 1940).

and (2) to calculate unreported income by adjusting unmarked tickets on the basis of patterns of consistency. Moreover, agent Klein's testimony is attacked as incompetent on the ground that the basis for his conclusions was not adequately set forth at trial. Finally, it is claimed that insufficient evidence was presented concerning 1957, 1958 and 1959, in that witnesses did not precisely identify the amounts or dates of inaccurate income reports allegedly related to those years.

We find no merit in appellant's contentions, however, and agree with the Government that the testimony of appellant's employees—Shaw, Brown and Lancaster—considered in light of the corroborating testimony of the location operators, is more than sufficient to support the inference that the code system employed during 1960 was also in use during the preceding three years. The four-year fraudulent collection system was attested to both by Lancaster, employed by appellant from 1957 to 1960, and by three location operators who maintained appellant's machines during the same period.

Also, the objection to IRS agent Klein's offer of specific evidence of unreported income for 1957, 1958, 1959 and 1960 is unwarranted. The basis for the adjusted income figures for each prosecution year produced by agent Klein was fully explained at the trial and appellant had ample opportunity to investigate and inspect the materials relied on by the Government. The approximately 14,000 collection tickets examined by the Government were all microfilmed and transferred to four ledger pads which were produced in court and available for inspection. Moreover, the introduction of total adjusted income figures for each year involved, in lieu of offering in evidence thousands of collection tickets, was consistent with the practice in this circuit of permitting the use of short-form summarizations by experts where, as here, thorough cross-examination is afforded and relevant records are available for inspection. See, e. g., Azcona v. United States, 257 F.2d 462, 466 (5th Cir. 1958); Cooper v. United States, 91 F.2d 195, 198 (5th Cir. 1937). See generally 4 Wigmore, Evidence, § 1230 (3d ed. 1940). Furthermore, agent Klein's investigation of 14,000 tickets revealed a consistent pattern of code check marks utilized during the four-year period and it was not unreasonable to infer that the markings conveyed identical messages throughout the period, especially since there is nothing of substance in the record to the contrary. Assuming arguendo that this case should be treated as a circumstantial evidence case,[4] wherein this court requires that "the inferences reasonably to be drawn from the evidence must be not only consistent with guilt * * * but inconsistent with every reasonable hypothesis of * * * innocence," Curtis v. United States, supra, 297 F.2d at 641, it would be unreasonable on this record to infer that the collection system employed by appellant from 1957 to 1960 accurately reflected the actual proceeds received from the operation of his vending machines.

Finally, while appellant urges that some error in the computation of unreported income might have resulted from the adjustment of unmarked tickets, the Government in criminal tax cases is not required to determine the amount of understatement for each prosecution year to a mathematical certainty. See, e. g., Sasser v. United States, 208 F.2d 535, 539 (5th Cir. 1953). See generally 10 Mertens, Federal Income Taxation, § 55A.27 (1964); Schmidt, Reconstruction of Income, 18 Tax L.Rev. 23, 25 (1962). The Government's reliance on "patterns of consistency" not only appears reasonable, but the restrictions on the utilization of this approach, e. g., it was employed only at locations where most tick-

4. "[T]he specific item method is frequently considered to be synonymous with direct evidence proof." Schmidt, Reconstruction of Income, 18 Tax L.Rev. 23, 27 (1962); see Kowalsky v. United States, 290 F.2d 161 (5th Cir. 1961).

ets were marked and was not applied to the $10 police pay-offs, indicate that any possible error in calculation was slight.

The judgment of conviction is affirmed.