**UNITED STATES of America, Appellee,**

v.

**David J. O'CONNOR, Defendant-Appellant.**

**No. 7629.**

United States Court of Appeals, First Circuit.

Oct. 16, 1970.

Francis J. DiMento, Boston, Mass., with whom DiMento & Sullivan and Thomas C. Cameron, Boston, Mass., were on brief, for defendant-appellant.

Wayne B. Hollingsworth, Asst. U. S. Atty., with whom Herbert F. Travers, Jr., U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

Defendant was convicted of wilful failure to file income tax returns for the years 1962 and 1963, in violation of 26 U.S.C. § 7203 (1964).

His primary contention at trial was that his alleged violations were not wilful. But the government's evidence against him on this point was plentiful. Defendant did not take the stand in his own defense, nor did he present any witnesses on his own behalf. He insisted to special agents of the Internal Revenue Service on several occasions that he had filed his returns. He gave the special agents a carbon copy of a letter allegedly sent to the Internal Revenue Service indicating that he had mailed his 1962 return on time. He also gave them a carbon of the allegedly mailed return. At conferences with Internal Revenue in Boston, New York, and Washington, defendant clung steadfastly to his story that he had filed the returns.[1] The government showed further that defendant, a state representative, had sent a political flier to his constituents indicating that he had paid his 1962 income tax. The government showed that he had also claimed by inference to have filed on time. These showings, along with proof that he had not filed, made a strong case against him.

---

1. On July 29, 1964, the 1963 return was filed and on August 13, 1964, the 1962 return was filed. These late filings, of course, do not prevent the prosecution for wilful failure to file.

Defendant was asked by a special agent, "Did you file your Federal Individual Income Tax Return for 1962?" He replied in the affirmative. Defendant objected to the admission of this question and his response. He would have us analogize this colloquy to the one in Flaherty v. United States, 355 F.2d 924 (1st Cir. 1966), vacated on other grounds, Piccioli v. United States, 390 U.S. 202, 88 S.Ct. 899, 19 L.Ed.2d 1034 (1968). The question asked the defendant in that case was: "If you were in the wagering business, would you have registered and purchased a federal stamp?" Only a lawyer could have realized what that question meant, for it was so phrased that "the incriminatory answer was precisely the one that would appear to be exculpatory." 355 F.2d at 926. Flaherty could not have realized that it was in his best interest to remain silent. In the instant case, the question was entirely straightforward; it was not a trick. Defendant could readily understand that to answer in the negative would be an admission of guilt and to answer in the affirmative would be a lie. He could very well have said nothing, as he was under no compulsion to speak. Instead, he lied, and the jury had a right to consider the lie along with other evidence as to his state of mind.

Defendant also objected to admission of copies of documents he gave to the special agents. He claims a violation of the best evidence rule because the documents admitted were not the ones he gave, but only copies thereof. Under Fed.R.Crim.P. 26 we must apply the common law best evidence rule. Defendant argues that, where an original document is allegedly lost, production of the original may be excused only if the trial court finds that it has become unavailable without the fault of the proponent. Old Colony Trust Co. v. Shaw, 348 Mass. 212, 219, 202 N.E.2d 785, 791 (1964), upon which he relies, does not support that proposition. It holds that if the trial judge finds the originals are unavailable without the *serious* fault of the

proponent and that reasonable search was made, copies are admissible. *Cf.* McDonald v. United States, 89 F.2d 128, 136 (8th Cir.), cert. denied, 301 U.S. 697, 57 S.Ct. 925, 81 L.Ed. 1352 (1937); *see generally* McCormick, Law of Evidence § 201 (1954). That being the rule, Sylvania Electric Products, Inc. v. Flanagan, 352 F.2d 1005, 1008 (1st Cir. 1965), the copies were admissible.

As stated above, the court admitted into evidence over defendant's objection of irrelevance, a political flier which demonstrated to defendant's constituents that his 1962 federal income tax had been paid in full. It also showed that his state tax returns for 1962 and 1963 were on file by August 9, 1964. We think that this evidence was relevant to prove defendant's state of mind when he failed to file his tax returns. United States v. Taylor, 305 F.2d 183 (4th Cir.), cert. denied, 371 U.S. 894, 83 S.Ct. 193, 9 L.Ed.2d 126 (1962), supports this holding. *Taylor* involved a jury conviction for filing a false income tax return. The defendant admitted at trial that he had been audited by state tax agents. He then admitted that he had paid additional state income taxes after the audit. The latter admission was objected to. Defendant also objected to questions asked about filing returns reporting the social security and withholding taxes of his secretary. In holding the questions to be proper, the court said:

> "It is well established that evidence of collateral facts, circumstances and other acts of a defendant of a character kindred to that for which he is on trial, whether occurring prior or subsequent to the alleged offense, may be admitted with proper explanation to the jury as to the limits within which it may be included and for what purposes. (Citations omitted). The information elicited from defendant over objection might well bear upon his attitude toward the reporting and payment of taxes generally and thus may have been helpful to the jury in ascertaining his intent in preparing and filing his 1955 tax return."

305 F.2d at 185–186. *Accord,* United States v. Magnus, 365 F.2d 1007, 1011 (2d Cir. 1966), cert. denied, 386 U.S. 909, 87 S.Ct. 856, 17 L.Ed.2d 783 (1967); Morrison v. United States, 270 F.2d 1 (4th Cir.), cert. denied, 361 U.S. 894, 80 S.Ct. 196, 4 L.Ed.2d 150 (1959); Emmich v. United States, 298 F. 5 (6th Cir.), cert. denied, 266 U.S. 608, 45 S. Ct. 93, 69 L.Ed. 465 (1924).

The case of United States v. Long, 257 F.2d 340 (3d Cir. 1958), held that the failure to file could not be used to help prove intentional misrepresentation on a later return. The *Long* court relied on Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943). But *Spies* only rejected the "contention that a willful failure to file a return, together with a willful failure to pay the tax may, *without more,* constitute an attempt to defeat or evade a tax * * *." 317 U.S. at 494–495, 63 S.Ct. at 366 (emphasis added). It did not say that a jury could not consider that failure. In fact, the Supreme Court said that the jury could consider the failures to file and to pay the tax *along with other acts* to find criminal tax evasion. 317 U.S. at 500, 63 S.Ct. 364. To the extent that *Long* is contra to our holding here, we prefer to follow *Taylor* and *Magnus, supra.* We think the same reasoning applies to the evidence of defendant's past history of delinquent payments.[2]

■ Defendant also objected to testimony by his accountant, Katz, relating to a conversation with the defendant about the flier. He also objected to receipt into evidence of a letter written by Katz about the flier in which the accountant's name prominently appeared. The evidence in question stated that Katz had not authorized the use of his name in the flier and that defendant knew of Katz's objections. We think that both the testimony and the letter were relevant once the flier was in evidence. The government was entitled to show that the accountant did not stand behind the flier, or else the jury could have inferred that defendant's statements in the flier followed good accounting procedures and that the accountant stood behind defendant in the presentation of the return to his constituents.

■ Also, defendant objected to an admission made by his attorney which was allowed into evidence. The attorney was acting under a power of attorney from defendant, which had been sent to the Internal Revenue Service. At a meeting with Internal Revenue, held in Washington, the defendant repeated his assertion that he had filed the tax returns in question. Shortly thereafter, he left the meeting but his attorney remained in the conference. The attorney then told the Internal Revenue officials that defendant had lied to them when he told them that his accountant, Katz, had mailed the returns to him for signing and filing. According to the attorney, defendant said this to protect Katz because "Katz was a C.P.A. and had a license." The attorney's story obviously contradicted defendant's statements. Defendant's attorney had "in all matters pertaining to any Federal Taxes for the calendar years ended 1962 and 1963 * * full power and authority to do and perform all and every act or thing whatsoever required and necessary." The power of attorney was in evidence. We think this point is controlled by United States v. Dolleris, 408 F.2d 918 (6th Cir.), cert. denied, 395 U.S. 943, 89 S.Ct. 2014, 23 L.Ed.2d 461 (1969). In *Dolleris,* a prosecution for tax evasion, the attorney representing the defendant under a similar power of attorney made certain admissions when his client was not present. The court held that these admissions were properly received in evidence against the defendant. *Cf.* Hayes v. United States, 407 F.2d 189 (5th Cir.), cert. denied, 395 U.S. 972, 89 S.Ct. 2133, 23 L.Ed.2d 777 (1969); Harris v. United States, 356 F.2d 582 (5th Cir. 1966);

---

2. Defendant does not urge that the court failed to instruct the jury as to the effect of the evidence and did not request any such instructions, Fed.R.Crim.P. 30, relying instead on his arguments of irrelevancy.

*see also* American Fur Co. v. United States, 2 Pet. 358, 27 U.S. 358, 7 L.Ed. 450 (1829); United States v. Gooding, 12 Wheat. 460, 25 U.S. 460, 6 L.Ed. 693 (1827). We might rule otherwise had defendant told his attorney not to make the statements or to confine himself to the position adopted by defendant. That would have been a case where the attorney exceeded the scope of his actual authority. But in the instant case no such defense was raised. The attorney may well have thought that an explanation for the motive for his client's misconduct would constitute, over all, a net gain in the eyes of the Service, which already appeared to believe that the misconduct had occurred. It was clearly within the power and duty of the attorney to do what he could, in his own best judgment, to dispel the suspicions of the Internal Revenue Service and avoid indictment.[3]

■ Over objection, a government witness was permitted to relate one of defendant's statements made at the New York conference with Internal Revenue officials that his father had been convicted of tax evasion and, because he had seen what his father had gone through, he certainly would have filed. Defendant argues that there was inherent prejudice in the admission of this testimony since its only effect was to lead the jury to a "like-father, like-son" conclusion. The statement may have had some such tendency; however, the admission was entirely relevant to the questions of knowledge and intent. Defendant, having offered his explanation himself, cannot object to its use.

■ Defendant contends that the trial court, in instructing the jury, withdrew from its consideration the issue of his duty to file. After carefully reading the charge in its entirety, we are convinced that this allegation is without merit. The court stated several times that the three elements of the crime had to be proved. Twice, in mentioning the requirement that the prosecution must prove that defendant had to make a return, the judge, said, "*I think* there is no dispute about that at all." (Emphasis added). However, on each occasion, the court quite clearly said, "Those three elements must be proved beyond a reasonable doubt before you would be warranted in returning a verdict of guilty." Defendant relies on DeCecco v. United States, 338 F.2d 797 (1st Cir. 1964). There, the trial court disregarded a requested instruction that the mere fact that the government's evidence on one element was uncontradicted did not require the jury to accept it. Instead, the court removed that element from jury consideration. It said that only the second element need be proved because there was no dispute over the first. In the instant case, the district court never intimated that only two elements need be proved. Nor was it clear in *DeCecco*, as it is here, that the instructions reiterated the fact that there were three elements for decision by the jury.

Defendant objected to the trial court's instruction on "reasonable doubt." We have examined the charge in its entirety and find no merit in this objection.

Defendant also complains that the district court erred in allowing special agents to testify about statements he made to them before he was advised of his constitutional rights. We have considered this question several times, most recently in United States v. Mitchell, 432 F.2d 354 (1st Cir. 1970). Suffice it to

3. Pickert v. Hair, 146 Mass. 1, 15 N.E. 79 (1888), cited by defendant, does say that an attorney's conversation relating to a fact in controversy, but not to an agreement relating to the management and trial of a suit, or an admission intended to influence procedure, was inadmissible. But even the Massachusetts court later recognized, Loomis v. New York, N. H. & H. R. Co., 159 Mass. 39, 34 N.E. 82 (1893), that an attorney retained to present and collect a claim may make admissions while acting within that authority. *See generally* Wigmore, Evidence § 1063 (1940).

say that the warnings referred to were not required here.

In all respects, we believe that the defendant had a fair trial and was fairly convicted.

Affirmed.