**UNITED STATES of America,**
**Appellant,**

v.

**Freddy VALENCIA, Defendant-Appellee.**

**No. 898, Docket 86–1496.**

United States Court of Appeals,
Second Circuit.

Argued March 9, 1987.
Decided Aug. 5, 1987.

Cheryl L. Pollak, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., and Emily Berger, Asst. U.S. Atty., Brooklyn, N.Y., on the brief), for appellant.

Michael M. Maloney, New York City, for defendant-appellee.

Before MESKILL and NEWMAN, Circuit Judges, and BLUMENFELD, District Judge.*

JON O. NEWMAN, Circuit Judge:

This appeal presents the issue, rarely litigated, whether statements made by defense counsel during informal conversations with a prosecutor may be admitted against a criminal defendant as admissions by an agent. The issue arises on an appeal by the United States from a pretrial order of the District Court for the Eastern District of New York (Henry Bramwell, Judge) excluding from evidence out-of-court statements made by a defendant's counsel in his efforts to secure bail for his client. Under the circumstances of this case, we conclude that Judge Bramwell did not exceed his discretion in excluding the attorney's statements, and we therefore affirm the ruling of the District Court.

## Background

Freddy Valencia is charged with conspiracy to possess and possession with intent to distribute cocaine. For purposes of this appeal, we accept the statement of facts alleged by the Government. The theory of the prosecution is that Valencia conspired with co-defendant Gladys Bolivar to sell a kilogram of cocaine to a Government informant. On August 19 and 20, 1986, Bolivar negotiated the sale with the informant during a series of phone calls. She later met him by arrangement in a supermarket in Queens and returned there to meet him a second time to deliver the narcotics. Valencia was seen joining Bolivar during the first meeting. He and Bolivar then left the

---

* The Honorable M. Joseph Blumenfeld of the United States District Court for the District of Connecticut, sitting by designation.

supermarket together in a car driven by Valencia, and he returned with her in the same car for the second meeting. When the informant gave the prearranged signal during the second meeting, Drug Enforcement Administration (DEA) agents arrested both Bolivar and Valencia.

Valencia retained attorney Michael Maloney to represent him. In late August and early September 1986, Maloney initiated several conversations with the case agent and the Assistant United States Attorney (AUSA) in an effort to persuade the Government to release Valencia on bail. One reason for setting bail, he argued, was that his client was innocent. Maloney represented that Valencia had not met Bolivar prior to August 20 and that his encounter with her that day was entirely innocent. In a telephone conversation with the AUSA, Maloney elaborated his contentions. According to Maloney, Valencia first saw Bolivar in the Queens supermarket and decided to try to "pick her up." He approached her and introduced himself. When, two hours later, he happened to see her again standing near a bus stop, he offered her a ride, which she accepted. The Government contends that in recounting this story, Maloney told the AUSA that he was repeating what his client had told him.

The Government later obtained evidence that contradicted Maloney's account of the facts and proved that Bolivar and Valencia had had a longstanding relationship since at least 1985. The Government sought a pretrial ruling that Maloney's remarks were admissible at trial as false exculpatory statements attributable to Valencia. It contended that because Maloney made those statements while acting on Valencia's behalf and within the scope of his employment, they were admissible as admissions of a party-opponent under the agency exceptions to the hearsay rule. Fed.R.Evid. 801(d)(2)(C), (D). The Government sought the right to use Maloney's statements both as substantive evidence to show Valencia's consciousness of guilt and as impeaching evidence if Valencia testified.

Ruling from the bench, Judge Bramwell denied the Government's motion. He ruled that Maloney's statements "may not be directly attributed to the defendant" and that their use would be "contrary to the attorney/client privilege." "To rule as the government asks," he cautioned, "would set a dangerous precedent for the admission of all informal, out-of-court statements by attorneys against their clients." The Government appeals from Judge Bramwell's order under 18 U.S.C. § 3731 (1982).

## Discussion

### I.

Preliminarily, we examine the procedure that gives rise to this interlocutory appeal. The ruling sought to be reviewed resulted from the Government's pretrial motion to have Maloney's statements admitted at trial. There is no provision of the Federal Rules of Criminal Procedure that explicitly authorizes such a motion. "[T]he practice [of *in limine* rulings] has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 463 n. 4, 83 L.Ed.2d 443 (1984). Rule 12(e) of the Criminal Rules authorizes a district judge to rule on a pretrial motion before trial, but Rule 12(b) limits pretrial motions to "[a]ny defense, objection, or request which is capable of determination without the trial of the general issue." The Government's motion for a ruling in favor of the admissibility of evidence is not a "defense" or an "objection," and, though it is generically a "request" for a ruling, that term, as used in Rule 12 when applied to the Government, would seem to mean requests for reciprocal discovery under Rule 16(b). *See* Fed.R.Crim.P. 12(b)(4). The procedure contemplated by Rule 12 to precipitate the ruling the Government sought in this case is notice by the Government of its intention to use particular evidence, Rule 12(d)(1), followed by the defendant's motion to suppress that evidence, Rule 12(b)(3).

Despite the lack of explicit authorization, the practice of pretrial rulings on Government motions to use evidence at tri-

al has been tacitly approved by the Supreme Court, *United States v. Helstoski,* 442 U.S. 477, 484, 487 n. 6, 99 S.Ct. 2432, 2437, 2439 n. 6, 61 L.Ed.2d 12 (1979), and by this Court, *United States v. Desist,* 384 F.2d 889, 897 (2d Cir.1967), *aff'd,* 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969). *See also United States v. Layton,* 720 F.2d 548, 553 (9th Cir.1983) (Government motion to admit at second trial evidence excluded at first trial), *cert. denied,* 465 U.S. 1069, 104 S.Ct. 1423, 79 L.Ed.2d 748 (1984); *United States v. Margiotta,* 662 F.2d 131, 136, 141 (2d Cir.1981) (same), *cert. denied,* 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983). In *Layton* the Ninth Circuit pointed out that the district judge has discretion in deciding whether to rule on a pretrial motion before trial. At first glance, that view seems at odds with the command of Rule 12(e) that "no such determination [of a pretrial motion] shall be deferred [until trial or verdict] if a party's right to appeal is adversely affected." We agree with the Ninth Circuit, however, because the motions covered by Rule 12(e) are only those included within Rule 12(b), which is limited to motions raising matters "capable of determination without the trial of the general issue." Many rulings on evidence cannot be made until the course of the trial reveals whether the disputed evidence is relevant, cumulative, or prejudicial. The district judge must have discretion in deciding whether a pretrial ruling on evidence may be made in advance of trial.

 In this case, Judge Bramwell evidently was satisfied that the Government's motion was appropriate for ruling in advance of the trial, and that decision was within his discretion. Once he ruled that evidence inadmissible, the Government was entitled to secure pretrial review pursuant to 18 U.S.C. § 3731. *United States v. Layton, supra; United States v. Margiotta, supra.*

## II.

 The Government contends that Maloney's statements to the prosecutor are admissible against Valencia under Rule 801(d)(2) of the Federal Rules of Evidence as admissions of a party-opponent. The Government relies alternatively on subsection 801(d)(2)(C), "a statement by a person authorized by [a party] to make a statement concerning the subject," or subsection 801(d)(2)(D), "a statement by [the party's] agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship." In this case, the Government gains nothing from subsection (C). The only basis relied on for a conclusion that Valencia authorized Maloney to make the offered statements is the fact that Maloney was Valencia's agent, that the subject matter was within the scope of the agency, and that the statements were made during the agency relationship. Thus, the Government's appeal stands or falls on whether Judge Bramwell erred in declining to consider the statements admissible under Rule 801(d)(2)(D).

This Court has recognized that "[s]tatements made by an attorney concerning a matter within his employment *may* be admissible against the party retaining the attorney." *United States v. Margiotta, supra,* 662 F.2d at 142 (emphasis added) (citations omitted). However, in *United States v. McKeon,* 738 F.2d 26 (2d Cir. 1984), we emphasized that care must be exercised in the criminal context in determining under what circumstances attorney statements may be used against a client, and we declined "to subject such statements to the more expansive practices sometimes permitted under the rule allowing use of admissions by a party-opponent." *Id.* at 31. Our concern arose because the routine use of attorney statements against a criminal defendant risks impairment of the privilege against self-incrimination, the right to counsel of one's choice,[1] and the right to the effective assistance of counsel. In *McKeon* we considered whether an attorney's description of facts during his opening statement in a criminal trial was admissible against his

---

1. In this case, the Government acknowledges that a ruling allowing Maloney's statements in evidence may require his disqualification as trial counsel. Brief for Appellant at 11 n. 3.

client on retrial to show consciousness of guilt arising from a change in the defense claim between the first trial and the retrial. Noting the analogous example of superseded pleadings in civil cases, which are viewed as admissions of a party-opponent and are admissible in both the original and subsequent cases, we concluded that opening statements were not per se inadmissible in criminal cases. Nevertheless, "to avoid trenching upon other important policies," *United States v. McKeon, supra,* 738 F.2d at 32, we declined to permit expansive use of prior jury argument at a prior trial. Only after canvassing the precise circumstances of the case did we approve the admission at retrial of counsel's opening argument at the prior trial.

The pending case differs from *McKeon* in several respects. First, the statements the Government seeks to use were not made in court but during the course of informal discussions between prosecutor and defense counsel concerning the defendant's release on bail. Unlike an opening statement, which is transcribed, or a written pleading, the statements of Maloney would have to be proved through the testimony of a person who heard them, thereby generating dispute as to precisely what was said. Moreover, a pleading or an opening statement to a jury is more likely to be worded with precision than informal remarks made during discussions with a prosecutor.

■ Second, unlike *McKeon,* the admission of Maloney's statements would pose some threat to chilling the prospects for plea negotiations. Though the statements were not made during the course of plea negotiations and therefore were not automatically excludable under Fed.R.Evid. 410, *see* Fed.R.Crim.P. 11(e)(6), a statement by defense counsel protesting a client's innocence may often be the prelude to plea negotiations. A district court is entitled to consider whether trial use of informal attorney statements will lessen the prospects for plea negotiation or inhibit frank discussion between defense counsel and prosecutor on various topics that must be freely discussed in the interest of expediting trial preparation and the conduct of the trial.

Third, as we noted in *McKeon,* the opening statement was offered in that case to counter a position taken by the defense at the retrial that was directly inconsistent with the position set forth in the prior jury argument. By contrast, Maloney's statements are sought to be used as consciousness of guilt arising from an out-of-court denial of facts that the prosecutor is prepared to prove at trial are true. The statements are also sought to be used for impeachment in the event that the defendant testifies at trial. The justification for using the statements is far less substantial than those relied on to uphold the trial judge's decision in *McKeon.*

■ We recognized in *McKeon* that a district judge must be sensitive to competing concerns in deciding whether to admit attorney statements against a client accused of crime. In the context of some evidentiary issues, we have recognized that "the trial judge is in the best position to weigh competing interests in deciding whether or not to admit certain evidence." *United States v. Moon,* 718 F.2d 1210, 1232 (2d Cir.1983), *cert. denied,* 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984); *United States v. Aulet,* 618 F.2d 182, 191 (2d Cir.1980); *United States v. Asbury,* 586 F.2d 973, 978 (2d Cir.1978). Though some provisions of the Federal Rules of Evidence are precise, permitting little, if any, room for the exercise of trial court discretion in their application, we think the trial judge must be accorded considerable discretion in determining the application of Rule 801(d)(2) to statements of an attorney offered by the prosecutor against a criminal defendant.

■ In this case the Government's claim to the statements is not strong. The statements are not offered to show admission of an element of the offense, a use that would directly prove the Government's case and expedite the trial. Weighing against use of the statements are the defendant's interests in retaining the services of his counsel, assuring uninhibited discussions between his counsel and the prosecutor, and avoid-

ing the risk of impairing his privilege against self-incrimination. We cannot say that Judge Bramwell exceeded his discretion in a context involving the substantial concerns we have noted. Moreover, the Government had the option, when presented with Maloney's statements, to invite counsel to furnish an affidavit of his client's version of the facts.

The order of the District Court is affirmed.[2]

MESKILL, Circuit Judge, dissenting:

I disagree with the majority's asserted grounds for affirming the district court and I respectfully dissent.

The majority states that the government "gains nothing" from arguing the applicability of subsection (C) of Fed.R.Evid. 801(d)(2) to this case. Subsection (C) should not be rejected out of hand, however. Subsection (C) provides that "a statement by a person authorized by [a party] to make a statement concerning the subject" may be admitted as an admission by a party opponent. Here, although we have no evidence of express authorization to make the statement, it can be reasonably inferred that Valencia communicated to his attorney the information concerning his association with Bolivar with the expectation that it would be used to exculpate him. Because I believe that Valencia implicitly authorized Maloney to use these statements, I would hold that the statements qualified for admission under Rule 801(d)(2)(C).

The majority next holds that Judge Bramwell did not abuse his discretion in excluding Maloney's statements under subsection (D) of Rule 801(d)(2). I disagree. There can be no dispute that the statements satisfied the literal requirements of

subsection (D). These statements were made by Maloney, an agent of defendant Valencia. They were made during the course of bail negotiations, a matter clearly within the scope of Maloney's employment. Also, the statements were made during the existence of the agency relationship. Thus, all of the requirements of Rule 801(d)(2)(D) were met.

The majority looks beyond the literal requirements of the Rule and holds that Judge Bramwell did not abuse his discretion in excluding Maloney's statements. The majority relies on *United States v. McKeon*, 738 F.2d 26 (2d Cir.1984), to support its conclusion. In *McKeon*, we reaffirmed that " '[s]tatements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney.' " *Id.* at 30 (quoting *United States v. Margiotta*, 662 F.2d 131, 142 (2d Cir.1981), *cert. denied*, 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983)). We also noted, however, that in the context of criminal cases "such statements [should not be subject] to the more expansive practices sometimes permitted under the rule allowing use of admissions by a party-opponent." *Id.* at 31. "[I]n order to avoid trenching upon other important policies," *id.* at 32, therefore, we held that the use of an attorney's prior jury argument should be admitted as a party admission only under certain conditions. Although prior jury argument is not involved in this case, these conditions no doubt apply equally to Maloney's statements, which were made during the course of informal bail negotiations.

The first consideration identified in *McKeon* is whether "free use of prior [statements] might consume substantial time to pursue marginal matters." *Id.* Maloney's statements, however, did not re-

---

**2.** In upholding Judge Bramwell's decision not to admit Maloney's statements under Rule 801(d)(2), we need not consider the District Judge's view that the admission of the statements would have violated Valencia's attorney-client privilege. Specifically, we do not decide whether under the circumstances of this case, Maloney was authorized to waive the privilege for his client, *see, e.g., In re Grand Jury Investigation of Ocean Transportation*, 604 F.2d 672,

675 (D.C.Cir.), *cert. denied*, 444 U.S. 915, 100 S.Ct. 229, 62 L.Ed.2d 169 (1979), whether his conversation with the prosecutor constituted such a waiver, or whether the statements reported remarks that Valencia had made without any legitimate expectation of confidentiality, *see, e.g., United States v. Tellier*, 255 F.2d 441, 447 (2d Cir.), *cert. denied*, 358 U.S. 821, 79 S.Ct. 33, 3 L.Ed.2d 62 (1958)..

late to "marginal matters." Instead, the statements are the only innocent explanation offered so far for Valencia's association with Bolivar. No danger is presented here concerning jury confusion with issues that are collateral to the central question of guilt or innocence.

Second, *McKeon* cautions that "inferences drawn from an inconsistency in [prior statements] may be unfair." *Id.* In this case, however, the jury could fairly conclude that the falsity of Valencia's explanation implies consciousness of guilt. Indeed, in the absence of some other plausible explanation, this would seem to be the only rational inference that could be drawn. *McKeon's* concern for fairness, therefore, is likewise not implicated here.

The third factor to be considered is whether "the free use of prior [statements] may deter counsel from vigorous and legitimate advocacy." *Id.* Rather than deter advocacy, however, I suggest that admission of Maloney's statements would cause counsel to be more careful in verifying the accuracy of information offered by the client before communicating the client's statements to the government. An attorney who possesses competent and reliable information favorable to his client will rarely be deterred by Rule 801 from vigorously pursuing his client's interests. Accordingly, consideration of this factor does not support Judge Bramwell's decision.

*McKeon's* fourth consideration is that a defendant may be forced to take the stand to explain the inconsistency in the attorney's statement where an innocent explanation exists, thus forcing a waiver of his Fifth Amendment privilege. *Id.* In this case, however, Maloney's statements would be contradicted by evidence already possessed by the government. Valencia offers not a hint that he has an innocent explanation for this contradiction or would be forced to take the stand to offer one. We should not presume that this danger exists absent some indication in the record.

Finally, the last factor identified in *McKeon* is the danger that use of an attorney's prior statement may lead to disqualification of counsel, thus implicating a defendant's right to counsel of one's own choosing. *Id.* at 33. In *McKeon*, two inconsistent opening statements made by defense counsel were at issue. In such a case, it is clear that defense counsel "ought" to be called as a witness to explain the inconsistency. New York Disciplinary Rule 5–102(A) (McKinney 1975), prohibits an attorney from serving as counsel where he is expected to testify on behalf of his client. Here, however, Maloney merely offered a statement that would be *contradicted* by the government's evidence. He did not offer two inconsistent versions of the same event. Unlike the situation where the attorney himself creates the inconsistency, Maloney would not be expected to take the stand on behalf of his client to explain why the government's evidence contradicted his own.[1] None of the considerations in *McKeon*, therefore, argues in favor of excluding Maloney's statement under Rule 801(d)(2)(D).

The majority recognizes the differences between our case and *McKeon*, but takes the position that these differences provide additional reasons under the Rule for excluding Maloney's statements. First, they theorize that difficult problems of proof will arise in a case such as this where the statements were made in an informal, off-the-record setting rather than at trial as in *McKeon*. In our case, however, there is *no* dispute over the content of Maloney's statements. The parties seem to agree that the statements concerned the duration of Valencia's relationship with Bolivar. Moreover, since the relevance of these statements is unquestioned, it would seem that any problems of proof concerning their precise content, if such problems did arise, are problems that go to the weight of the evidence rather than to its admissibility. Furthermore, there is no indication that Judge Bramwell relied on this factor in excluding the evidence.

1. Although, as the majority notes, the government "acknowledges" that Maloney might be subject to disqualification, its concession alone does not provide a reasoned explanation for why Maloney might be called as a witness in this case.

Second, the majority holds that the statements could be excluded because they "would pose some threat to chilling the prospects for plea negotiations." But at the time these statements were made, the parties were conducting bail negotiations, not plea negotiations. Statements made during the course of plea negotiations are fully protected from disclosure by Fed.R. Evid. 410. The federal rules *do not* provide for the automatic exclusion of statements not made during the course of plea negotiations, even if those statements are a "prelude" to plea negotiations as the majority contends here. The majority's solution, therefore, would give protection to statements that the federal rules were not intended to cover. Also, nothing in Rule 801 provides for a judge's consideration of the likelihood of future plea negotiations as a basis for excluding evidence that meets all of the requirements of the Rule. Judge Bramwell's recourse to exclude unfair and prejudicial evidence would have been to resort to Fed.R.Evid. 403, the general rule of exclusion. This he did not do. I believe that the majority's attempt to fill this void by broadening a district judge's discretion under Rule 801 is both unwise and unfortunate.

Finally, as a third basis for excluding Maloney's statements, the majority writes that "the Government's claim to the statements is not strong." According to the majority, the government did not seek the statements to prove directly an element of the offense. Rather, the government sought merely to establish consciousness of guilt. I would contend, however, that in a case such as this where it is the government's word against that of the defendant, evidence tending to show consciousness of guilt is indeed important to the government's case. If it can be established that defendant's only innocent explanation for the course of events leading to his arrest was a fabrication, then the government's case is significantly strengthened. I believe that the government's claim to the evidence is very strong. Moreover, the majority proposes no standards by which to judge how "strong" the government's

claim to the evidence must be before it can be admitted under Rule 801.

The differences between this case and *McKeon* do not support the majority's conclusion that Judge Bramwell did not abuse his discretion in excluding Maloney's statements from evidence. The differences, where they exist, are largely irrelevant. Because I conclude that Maloney's statements should have been admitted as admissions under Rule 801, I will address the remaining issues concerning the attorney-client privilege and privilege against self-incrimination.

The district court held that the statements were protected by the attorney-client privilege because they were made by Maloney in an "informal" setting. App. at 8. Whether the statements were conveyed in a formal or informal setting, however, is beside the point. The relevant questions are whether the defendant communicated information to his attorney with the expectation that his communications would remain confidential, *see, e.g., United States v. Tellier*, 255 F.2d 441, 447 (2d Cir.), *cert. denied*, 358 U.S. 821, 79 S.Ct. 33, 3 L.Ed.2d 62 (1958), and whether the privilege, if it existed, was waived. *See In re Grand Jury Investigation of Ocean Transportation*, 604 F.2d 672, 675 (D.C.Cir.), *cert. denied sub nom. Sea-Land Serv. v. United States*, 444 U.S. 915, 100 S.Ct. 229, 62 L.Ed.2d 169 (1979). Considering the clearly exculpatory nature of Valencia's statements, and his awareness that Maloney was engaged in bail negotiations on his behalf, it would be incredible to suggest that Valencia did not expect this information to be used to secure his release. Because Valencia would not reasonably wish to have his self-serving statements to Maloney held in confidence, I would hold that the communications were not protected by the attorney-client privilege. *See Tellier*, 255 F.2d at 447 (information communicated to attorney with no expectation of confidentiality held not protected by attorney-client privilege).

Even if the privilege did attach, however, it has been recognized that the privilege can be waived by an attorney acting within the scope of his authority. *See Ocean*

*Transportation,* 604 F.2d at 675. Clearly, Maloney had authority to enter into bail negotiations on behalf of Valencia. This authority implied the power to decide what information was to be used to secure the release of his client. *Id.* Having implicitly granted his attorney this authority by hiring Maloney and by providing Maloney with the necessary tools (the statements) to accomplish his purpose, Valencia "may not now be heard to complain about how that authority was exercised." *Id.* I would, therefore, hold that the privilege, even if it existed, was waived.

Valencia's final claim is that admission of the statements made through Maloney would violate his privilege against self-incrimination. Earlier the Drug Enforcement Administration accepted similar statements from Valencia without satisfying the requirements of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and the government agreed not to use those statements. Valencia now claims that use of Maloney's statements would constitute a further violation of *Miranda.* The exclusion of a statement on the basis of a *Miranda* violation, however, does not render all subsequent statements on the subject matter excludable. *See Oregon v. Elstad,* 470 U.S. 298, 318, 105 S.Ct. 1285, 1298, 84 L.Ed.2d 222 (1985); *United States v. Morales,* 788 F.2d 883, 886–87 (2d Cir. 1986). "[A] simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will [does not] so taint[ ] the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period." *Elstad,* 470 U.S. at 309, 105 S.Ct. at 1293. Here, there was no evidence of coercion either by the government or by Maloney. Valencia's statements were entirely voluntary and he had every reason to expect that Maloney would use them to secure his release on bail. Accordingly, I would hold that no *Miranda* violation occurred and, for all of the above reasons, I would reverse the decision of the district court.