UNITED STATES of America

v.

Stephen T. PAPPAS, Joan E. Pappas.

Crim. Nos. 92–24–01–S and 92–24–02–S.

United States District Court,
D. New Hampshire.

Oct. 23, 1992.

Brian T. Tucker, Asst. U.S. Atty., Concord, N.H., for plaintiff.

Daniel J. O'Connell, Paul J. Dee, Jr., Martin D. Boudreau, Boston, Mass., for defendants.

## ORDER

DiCLERICO, Acting Chief Judge.

Defendants have been charged with violating federal income tax laws. Prior to their indictment, defendants' lawyer and accountants (collectively, "defendants' representatives") met with Internal Revenue

Service ("IRS") officials pursuant to written powers of attorney from the defendants. During these meetings, defendants' representatives allegedly made inculpatory statements concerning defendants' activities.[1] The Government intends to offer these statements at trial pursuant to Fed. R.Evid. 801(d)(2)(D).[2] Defendants seek an evidentiary hearing to determine the admissibility of the statements, arguing such statements were beyond the authority granted by the powers of attorney. They also argue the introduction of statements by their lawyer may violate the attorney-client privilege. Finally, they argue they were never warned that the statements the representatives made would be used against them in subsequent proceedings.[3]

After due consideration, the court concludes a hearing is not necessary. Because the powers of attorney authorize the making of the allegedly inculpatory statements, because there is no violation of the attorney-client privilege, and because the IRS did not need to warn defendants that their representatives' statements would be binding against them, the court denies defendants' motion.

### *Discussion*

#### A. Scope of Authority

 Statements made by representatives acting pursuant to a power of attorney may be admitted against a criminal defendant, provided they are made within the scope of the power. *See United States v. O'Connor,* 433 F.2d 752, 755–56 (1st Cir. 1970), *cert. denied,* 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971); *United States v. Dolleris,* 408 F.2d 918, 921–22 (6th Cir.), *cert. denied,* 395 U.S. 943, 89 S.Ct. 2014, 23 L.Ed.2d 461 (1969); *United States v. Amelia,* 637 F.Supp. 1205, 1205–06 (D.Mass. 1986).

In *O'Connor,* the power of attorney gave defendant's attorney "full power and authority to do and perform all and every act or thing whatsoever required and necessary." 433 F.2d at 755. In *Dolleris,* upon which the *O'Connor* court relied, the power of attorney authorized defendant's attorney to "do and perform any and all other lawful acts as shall be deemed necessary or proper to protect my interests," and gave the attorney "full power and authority to do and perform all and every act or thing whatsoever requisite or necessary ... as fully to all intents and purposes as I might or could do...." *Dolleris,* 408 F.2d at 921. In both cases, the courts allowed the attorneys' statements to be admitted into evidence, finding them within the scope of the respective powers of attorney. By contrast, the court in *Amelia* found the challenged power of attorney was not as broad in scope as those in *O'Connor* and *Dolleris* and therefore excluded the defendant's attorneys' statements. *Amelia,* 637 F.Supp. at 1206.

The *Amelia* court noted the power of attorney was a two-paragraph printed form provided by the Internal Revenue Service. *Id.* The first paragraph stated the defendant and his wife appointed three attorneys:

as attorney(s)-in-fact to represent the taxpayer(s) before any office of the Internal Revenue Service for the following Internal Revenue tax matters (specify the type(s) of tax and year(s) or period(s) (date of death if estate tax)):
All matters before the Internal Revenue Service which relate in any way to the taxpayers' 1978, 1979, 1980, 1981 and 1982 Individual Income Tax Returns.

*Id.* The second paragraph stated:
The attorney(s)-in-fact (or either of them) are authorized, subject to revocation, to

---

**1.** Defendants' lawyer, Sari Ann Strasburg, and defendants' accountants, Joyce B. Lehman and Henry J. Haas, participated in three meetings and three telephone conversations with IRS officials between October 5, 1989 and February 7, 1990.

**2.** Fed.R.Evid. 801(d)(2)(D) provides: "A statement is not hearsay if ... (2) the statement is offered against a party and is ... (D) a state-

ment by the party's agent or servant concerning a matter within the scope of the agency or employment made during the existence of the relationship."

**3.** Defendants previously filed a motion to exclude the testimony, which U.S. Magistrate William H. Barry denied without a hearing on July 21, 1992.

receive confidential information and to perform on behalf of the taxpayer(s) the following acts for the above tax matters: (Strike through any of the following which are not granted).

To receive, but not to endorse and collect, checks in payment of any refund of Internal Revenue taxes, penalties, or interest. . . .

To execute waivers (including offers of waivers) of restrictions on assessment or collection of deficiencies in tax and waivers of notice of disallowance of a claim for credit or refund.

To execute consents extending the statutory period for assessment or collection of taxes.

To execute closing agreements under section 7121 of the Internal Revenue Code.

To delegate authority or to substitute another representative.

Other acts (specify). . . .

*Id.*

The *Amelia* court disagreed with the Government that the language in the first paragraph of the power of attorney, specifically the words "[a]ll matters before the Internal Revenue Service . . ." was broad enough to authorize the attorneys' statements. The court indicated that

[t]he Government's error is in the assumption that the first paragraph authorizes anything. The power of attorney contains but a single "authorizing" paragraph, namely the second. The paragraph which the Government considers to be the "first authorizing paragraph" in fact authorizes nothing. It simply defines those matters to which the power of attorney, created in the second paragraph, will apply.

*Id.* at 1206–07. In addition, the *Amelia* court rejected the Government's argument that the authority to do those acts specified in the second paragraph of the power of attorney implied the authority to speak for the defendant. *Id.* The court noted it was unwilling to imply such authority from the language of the power of attorney, "particularly in a criminal case such as this where the challenged form was prepared and supplied by the Government." *Id.*

In the present action, the printed power of attorney forms were prepared and supplied to defendants' representatives by the IRS. Nevertheless, the language of the challenged powers of attorney is similar to that in the *O'Connor* and *Dolleris* decisions, and is substantively distinguishable from *Amelia.*

■ The first paragraph of the powers of attorney in this case are similar to that in the *Amelia* decision. The first paragraph states

Taxpayer(s) hereby appoint(s) the following individual(s) as attorney(s)-in-fact to represent the taxpayer(s) before any office of the Internal Revenue Service for the following tax matter(s) (specify the type(s) of tax and year(s) or period(s) (date of death if estate tax)):

Type of tax: Individual

Federal Tax Form Number: 1040

Year(s) or period(s): [4]

The second paragraph states

The attorney(s)-in-fact (or either of them) are authorized, subject to revocation, to receive confidential information and *to perform any and all acts that the principal(s) can perform* with respect to the above specified tax matters (excluding the power to receive refund checks and the power to sign the return, unless specifically granted below). See Regulations section 1.6012–1(a)(5) for information on returns made by agents. (*List excludable powers below.* Indicate if you are granting the power to sign the return.)

(Emphasis added). Defendants did not exclude any powers.

---

4. Three power of attorney forms are challenged in this action. The first, dated June 6, 1989, authorizes Joyce B. Lehman and Henry J. Haas to represent defendants for the 1987 tax year; the second, dated June 29, 1989, authorizes Joyce B. Lehman and Henry J. Haas to represent defendants for the 1986 and 1988 tax years; the third, dated October 19, 1989, authorizes Sari Ann Strasburg and John R. Monson to represent defendants for the 1986, 1987 and 1988 tax years.

The language in this paragraph, unlike the language in the second paragraph in the *Amelia* case, grants broad authority to defendants' representatives. They have the authority "to perform any and all acts the principal(s) can perform," which clearly encompasses the authority to make the allegedly inculpatory statements.

Nevertheless, defendants assert in their motion that the powers of attorney were given to respond to an IRS civil audit and, as such, they gave no authority to respond to the subsequent investigation by the IRS Criminal Division. The plain language of the powers of attorney, however, discredits this argument. Language such as "perform any and all acts the principal(s) can perform" means the representatives can respond, just as defendants can, to both a civil audit and a criminal investigation. This conclusion is also supported by the fact the powers of attorney require defendants to "[l]ist excludable powers." Such language puts the burden on defendants to limit their representatives' authority, including a limitation that statements are to be made only for purposes of a civil audit. If they choose to do so, the defendants must limit the authority of their representatives before they send them to act on their behalf. Defendants have failed to show they did so, offering no evidence of an oral modification of the written powers of attorney prior to the representatives' meetings with the IRS.[5]

In light of this discussion, the court finds the statements made by defendants' representatives are clearly within the scope of the powers of attorney.

## B. Privilege

■ Defendants claim their attorney's statements may be protected from disclosure by the attorney-client privilege. The court finds that any attorney-client privilege was waived when defendants sent their lawyer to represent them before the IRS.

■ The party asserting the privilege has the burden of proving the existence of the attorney-client privilege. *United States v. Bay State Ambulance and Hosp. Rental Serv.*, 874 F.2d 20, 28 (1st Cir.1989); *United States v. Martin*, 773 F.2d 579, 583–84 (4th Cir.1985). To successfully assert the privilege, the party must meet four requirements: (1) that he or she was or sought to be a client of the attorney; (2) that the attorney acted as a lawyer; (3) that the attorney's statement relates to facts communicated for the purpose of securing a legal opinion, legal services or assistance in a legal proceeding; and (4) that the privilege has not been waived. *Bay State*, 874 F.2d at 27–28; *United States v. Wilson*, 798 F.2d 509, 512 (1st Cir.1986). If the party fails to meet his or her burden as to any one element, the privilege cannot be invoked. *Wilson*, 798 F.2d at 512–13.

■ Defendants here cannot show the privilege has not been waived and, therefore, cannot invoke the attorney-client privilege. To avoid waiver of the privilege, a party must intend the information given to his or her attorney remain confidential. *Martin*, 773 F.2d at 584. Even when such confidentiality is intended, however, clients waive the privilege by authorizing their lawyers to represent them before the IRS. *Id.; United States v. Mierzwicki*, 500 F.Supp. 1331, 1334 (D.Md.1980). *Cf. O'Connor*, 433 F.2d at 755–56 (court admitted attorney's statements to IRS officials against client without discussion of attorney-client privilege). Because defendants authorized their lawyer to represent them before the IRS, their lawyer's statements are not protected from disclosure by the attorney-client privilege.[6]

---

5. Defendants filed no affidavits as required by Local Rule 11(c).

6. The court notes there is no difficulty with the testimony of defendants' accountants. "[N]o confidential accountant-client privilege exists under federal law, and no state-created privilege has been recognized in federal cases." *United States v. Arthur Young & Co.*, 465 U.S. 805, 817, 104 S.Ct. 1495, 1502–03, 79 L.Ed.2d 826 (1984) (quoting *Couch v. United States*, 409 U.S. 322, 335, 93 S.Ct. 611, 619, 34 L.Ed.2d 548 (1973)).

### C. Notice Requirement

■ Defendants suggest they should have been given notice, presumably akin to a *Miranda* warning, that the statements made by their representatives would be used against them in court. Defendants' argument is without merit.

In *Miranda v. Arizona*, the Court announced that officials must give warnings against self-incrimination only "when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subject to questioning." 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). If the questioning is voluntary, then no *Miranda* warnings are required. *See United States v. Lanni*, 951 F.2d 440, 442 (1st Cir.1991). In this case, defendants make no suggestion that the meetings between the representatives and the IRS officials were anything but voluntary. As such, no warning against self-incrimination is required.

### D. Defendants' Additional Arguments

While the court believes the prior discussion is sufficient to find the statements made by defendants' representatives admissible, defendants nevertheless urge the court to consider the Second Circuit decisions in *United States v. McKeon*, 738 F.2d 26 (2d Cir.1984), and *United States v. Valencia*, 826 F.2d 169 (2d Cir.1987), and suppress the representatives' statements. For the following reasons, the court concludes that *McKeon* and *Valencia* do not require the suppression of the statements.

In *McKeon*, the Government sought to introduce inconsistent statements from defense counsel's prior opening argument as proof of defendant's consciousness of guilt.[7] 738 F.2d at 29. The district court admitted the statement as an admission under Fed.R.Evid. 801(d)(2). *Id.* The Second Circuit affirmed the ruling, noting that

statements made by an attorney concerning a matter within his or her employment may be admissible against the party retaining the attorney. *Id.* at 30. Nevertheless, the court noted it was unwilling "to subject such statements to the more expansive practices sometimes permitted under the rule allowing use of admissions by a party opponent." *Id.* at 31.

The court noted five concerns raised by the facts of the case which counseled against a broad *per se* admissibility rule. First, the free use of prior jury arguments might consume substantial time to pursue marginal matters. *Id.* at 32. Second, inferences drawn from inconsistent arguments to a jury may be prejudicial. *Id.* Third, the free use of prior jury arguments may deter counsel from vigorous and legitimate advocacy because of apprehension about arguments made to a jury in an earlier trial. *Id.* Fourth, where an innocent factual explanation of a seeming inconsistency created by the prior jury argument exists, the offer of that explanation may seriously affect other rights of the defense. *Id.* Finally, the admissibility of the prior opening argument may lead to the disqualification of counsel chosen by the defendant. *Id.* at 33. Nevertheless, after applying these principles to the facts of the case, the *McKeon* court concluded the lawyer's statement was properly admitted against the defendant under Fed.R.Evid. 801(d)(2)(B) and (C). *Id.* at 33.

■ After reviewing each of these concerns as they apply to the facts in this case, the court concludes *McKeon* presents no bar to the admissibility of defendants' representatives' statements. First, the court does not predict a substantial waste of time on marginal matters if the statements are admitted. While the court intends no role in shaping trial strategy, presumably the Government intends to offer the represen-

---

**7.** Defendant's first trial on charges of illegal exportation of firearms ended in a mistrial after the jury was unable to reach a verdict. During the opening argument in the second trial, defense counsel asserted that defendant's wife did not photocopy documents linking defendant to the alleged shipper of the firearms. After that trial ended in a mistrial, defendant's lawyer

learned the Government had retained a different expert to testify about photocopying and photocopying machines. As a result, defendant's lawyer stated in his opening argument at the third trial that defendant's wife did photocopy the documents for her husband. *McKeon*, 738 F.2d at 28–30.

tatives' statements as consciousness of defendants' guilt under Fed.R.Evid. 404(b). In response, defense counsel is likely to argue the defendants lacked the necessary intent to be convicted of the crime. The representatives' statements, to the extent they address this issue, are not tangential, but go to the heart of the indictment.

*McKeon's* second, third and fourth factors also present no obstacle to admitting the statements in this case. When discussing these concerns, the *McKeon* court was concerned with the potential for prejudice in the current trial due to statements made in a prior trial. Here, there is no such concern. The representatives' statements, unlike the lawyer's prior argument in *McKeon,* have not been before a jury. Defendants have not been forced to shift their current strategy to respond to a prior strategic decision. Admitting the statements will not prejudice their efforts to plan their defense. Finally, the court notes that admitting the statements will have no effect on defendants' right to counsel. In *McKeon,* defendant's trial lawyer was disqualified from representing the defendant because of the court's decision to admit the prior statement. Here, defendants' trial lawyers would not be disqualified by the admission of the statements of defendants' representatives.

The court also finds no support for defendants' position in the decision of *United States v. Valencia.* There, the Government moved to introduce against the defendant statements made by defense counsel during informal conversations with a prosecutor, arguing the statements were substantive evidence of defendant's consciousness of guilt. 826 F.2d at 170–71. In denying the Government's motion, the district court cautioned against a "dangerous precedent for the admission of all informal, out-of-court statements by attorneys against their clients." *Id.* at 171.

The Second Circuit began its review with the proposition that statements made by an attorney concerning a matter within his or her employment may be admissible against the party retaining the attorney. *Id.* at 172. The *Valencia* court, agreeing with

the *McKeon* decision, cautioned against an expansive rule of admissibility because "the routine use of attorney statements against a criminal defendant risks impairment of the privilege against self-incrimination, the right to counsel of one's choice, and the right to effective assistance of counsel." *Valencia,* 826 F.2d at 172. After reviewing the circumstances of the case, the *Valencia* court affirmed the district court's decision to exclude the lawyer's statements. *Id.* at 174.

Here, the court is not dealing with informal statements, as in *Valencia,* but rather with statements given pursuant to powers of attorney signed by the defendants. While the court is careful to honor scrupulously defendants' rights against self-incrimination, their right to counsel of their choice, and their right to effective assistance of counsel, *see Valencia,* 826 F.2d at 172, none of these rights would be violated by the admission of their representatives' statements.

In conclusion, neither *McKeon* nor *Valencia* bar the admission of defendants' representatives' statements at trial.

### Conclusion

There is no bar to the Government introducing the statements of defendants' representatives at trial pursuant to Fed.R.Evid. 801(d)(2)(D). The representatives' statements were made within the scope of their authority; the statements were not privileged; and there was no requirement that *Miranda* warnings be given before the statements were made. No evidentiary hearing is required, and defendants' motion (document no. 35) is hereby denied.

SO ORDERED.