UNITED STATES of America,
Plaintiff-Appellee,

v.

Kenneth H. DOLLERIS, Defendant-
Appellant.

No. 18431.

United States Court of Appeals
Sixth Circuit.

March 20, 1969.

Certiorari Denied June 9, 1969.

See 89 S.Ct. 2014.

Lee S. Jones, Louisville, Ky., for appellant.

John P. Burke, Atty., Dept. of Justice, Washington, D. C., for appellee; Mitchell Rogovin, Asst. Atty. Gen., Joseph M. Howard, Atty., Dept. of Justice, Washington, D. C., on brief; Ernest W. Rivers, U. S. Atty., John L.·Smith, Asst. U. S. Atty., Louisville, Ky., of counsel.

Before O'SULLIVAN, EDWARDS, and McCREE, Circuit Judges.

McCREE, Circuit Judge.

Appellant was convicted by a jury on all counts of a nineteen count indictment charging wilful evasion of income taxes by the filing of false tax returns and wilful signing of false returns, in violation of Sections 7201 and 7206 of the Internal Revenue Code of 1954.

He is the principal officer and majority stockholder of D. & W. Sales and Service, Inc., hereinafter referred to as "D. & W.", a corporation located in Louisville, Kentucky and engaged in rebuilding and selling used automobile parts. The indictment charged him with making certain sales of scrap materials to Brodey & Brodey, Inc., hereinafter referred to as "Brodey", a corporation located in Indianapolis, Indiana, and to Louisville Scrap Material Co., Inc., hereinafter, "Louisville Scrap Co.", a corporation also located in Louisville, and with deliberately failing to report a part or all of the proceeds of these sales. The amounts alleged to have been unreported total approximately $43,000. Counts 1–5 and 11–14 of the indictment concern the tax returns of D. & W. for the fiscal years ending on January 31, from 1961 to 1965. Counts 6–10 and 15–19 concern taxpayer's personal returns for the same years.

The first question presented on appeal is whether the District Court erred in receiving certain testimony which appellant contends conveyed to the jury the fact that appellant had asserted his right to remain silent during the investigation

of his alleged tax evasion.[1] Although appellant cites several portions of testimony in support of this contention, he relies primarily on that of Internal Revenue Agent Bernard Morgan concerning a meeting attended by agents of the Internal Revenue Service, taxpayer and his attorney.[2]

It is true that "[t]he prosecution may not * * * use at trial the fact that * * * [the defendant] stood mute or claimed his privilege in the face of accusation." Miranda v. Arizona, 384 U.S. 436, 468, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966) (n. 37). *Accord*, United States v. McKinney, 379 F.2d 259 (6th Cir. 1967); United States v. Pearson, 344 F.2d 430 (6th Cir. 1965). It is also clear that testimony which is elicited to establish that a defendant claimed the privilege against self-incrimination before a grand jury or at a former trial is inadmissible. Grunewald v. United States, 353 U.S. 391, 77 S. Ct. 963, 1 L.Ed.2d 931, 62 A.L.R.2d 1344 (1957); Stewart v. United States, 366 U.S. 1, 81 S.Ct. 941, 6 L.Ed.2d 84 (1961). We do not think, however, that Morgan's testimony falls within the scope of these prohibitions. It was not deliberately elicited and conveyed only the fact that appellant's attorney had advised him of his constitutional right to remain silent.

Moreover, other testimony which the jury heard, and which is discussed *infra*, reveals that appellant cooperated with the agents after he had received this advice, and that he authorized his attorney to participate in conferences with them in order to explain the apparent inaccuracy of his returns. The other testimony relied upon by taxpayer only remotely lends itself to the contention he advances and does not merit further discussion.

In any event, this issue is not properly before us on appeal. During his trial, appellant made specific objections to some of this testimony, but made no objection at any time based on the constitutional grounds he now asserts. As this court stated in United States v. Miller, 316 F.2d 81 (6th Cir. 1963), cert. denied, 375 U.S. 935, 84 S.Ct. 335, 11 L.Ed. 2d 267 (1963), reh. denied, 375 U.S. 989, 84 S.Ct. 520, 11 L.Ed.2d 476 (1964):

The Supreme Court has held that an objection to evidence predicated upon a specific constitutional claim is not properly presented for review if the only objection made in the trial court was based on other grounds. On Lee v. United States, 343 U.S. 747, 749–750, n. 3, 72 S.Ct. 967, 96 L.Ed. 1270. Under such circumstances, the Court of Appeals may decline to consider the constitutional claim in the exercise of

1. "The taxpayer's objection is that the government related in testimony to the jury in a planned, subtle, adroit, skillful, effective, offensive, and running manner a dialogue between the prosecutor and the government witness Mr. Morgan to . inform the Court and the jury that the taxpayer, on advice of his counsel, elected to exercise his right to remain silent. * * *" Appellant's Reply Brief at 2.·

2. Morgan testified as follows:
Q. All right, Now, did you meet them on or about October 18th, 1957?
A. Yes. At that time Agent McLellan, Special Agent McLellan, was with me and we met Mr. Dolleris and Mr. Jones in Mr. Dolleris' office at D & W.
Q. And what was the purpose of meeting with them?
A. To discuss the examination.

Q. Did you talk to Mr. Dolleris?
A. Yes. And Mr. Jones advised Mr. Dolleris not to answer questions because they might be used against him. And at that time Agent McLellan stated that under the Constitution Mr. Dolleris had the right to refuse to answer any questions that he thought might incriminate him.
Q. Was anything said about these scrap sales to Brodey & Brodey?
A. Yes. We discussed this—Jones said that scrap sold to Brodey was weighed at D & W and picked up there by a Brodey truck. He said that Dolleris might have helped weigh the scrap and he said that he had the list of transactions which I had given him on March 17th, but he had not determined the cause of the discrepancies. Record at 249–250.

its discretion under Rule 52(b), F.R. Cr.P. 316 F.2d at 84.

Furthermore, even if receipt of this testimony were constitutional error and if, despite appellant's failure to make an appropriate objection to its receipt, we were disposed to consider this issue on appeal, we would hold that the error was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), reh. denied, 386 U.S. 987, 87 S.Ct. 1283, 18 L. Ed.2d 241 (1967).

■ The next question presented is whether statements made by Dolleris' attorney, Mr. Jones, during conferences held for the purpose of investigating the accuracy of appellant's returns were properly received by the District Court as admissions, even though Dolleris was not present at the conferences. Whether such statements constituted admissions by Dolleris depends on the scope of Jones' authority at the time they were made. Laird v. Air Carrier Engine Service, Inc., 263 F.2d 948 (5th Cir. 1959). As appellant observes, an attorney, merely because of his employment in connection with litigation, does not have the authority to make out-of-court admissions for his client, except those which are directly related to the management of that litigation. 7 Am.Jur.2d, Attorneys at Law § 122 (1963). However, on October 25, 1965, Dolleris executed a power of attorney [3] which provided in part:

KNOW ALL MEN BY THESE PRESENTS:

That I, Kenneth H. Dolleris, hereby make, constitute and appoint Lee S. Jones, my true and lawful attorney, hereby revoking any and all powers of attorney heretofore executed in the premises, for me and in my name, place and stead before the Internal Revenue Service, United States Treasury Department, to defend me against proposed income tax deficiency or income tax evasion or failure to file returns for all taxable years 1959, 1960, 1961, 1962, 1963, 1964, and 1965, to do and perform any and all other lawful acts as shall be deemed necessary or proper to protect my interest; to request of and receive from the Treasury Department such documents or copies thereof as I may be entitled under the law and the regulations; to demand and receive, giving and granting unto said attorney full power and authority to do and perform all and every act or thing whatsoever requisite or necessary in and about the premises as fully to all intents and purposes as I might or could do if personally present at the doing thereof; thereby ratifying and confirming all action my said attorney may have taken in this matter.

We hold that this instrument authorized Jones to participate in conferences with treasury agents and to attempt to explain to them the apparent inaccuracy of appellant's returns. Since the statements in question were made by Jones for this purpose, they were within the scope of his authority and testimony concerning them was properly admitted by the District Court.[4]

Any doubt about the intended legal effect of the power of attorney is dispelled by consideration of the circumstances under which it was executed and the subsequent acts of the parties. 3 Am.Jur.2d, Agency § 33 (1962). Appellant was aware of the purpose for which the conferences were held and obviously knew that his refusal or failure to provide a satisfactory explanation of his returns would be likely to result in criminal prosecution. On March 17, 1965, he and Jones attended the first conference and

---

3. This power was admitted into evidence as "Government Exhibit No. 31" and is set forth in Appendix B to Appellee's Brief at 28.

4. Taxpayer moved to exclude all statements made by his attorney during con-ferences at which he was not present. The District Court, after taking this motion under submission, denied it in chambers. Appendix to Appellant's Brief at 294a. Since we are given no reason for this denial, we must assume that it was also for this reason.

he allowed Jones to answer many of the questions posed by the agents and to receive a list of allegedly unreported items. At a second conference held on October 18, 1965, he allowed Jones to respond to all questions asked by the agents. One week later he executed the power of attorney. Thereafter, Jones, unaccompanied by Dolleris, participated in four more conferences held during 1965 and 1966. One of these conferences was held in the D. & W. offices, and appellant was invited to attend at least one of these meetings but declined to do so.

In Epstein v. United States, 246 F.2d 563 (6th Cir. 1957), cert. denied, 355 U.S. 868, 78 S.Ct. 116, 2 L.Ed.2d 74 (1957), this court determined that two letters written by the appellant's accountant during an investigation of income tax evasion were admissible into evidence, stating:

> The contention that the court committed reversible error in permitting the admission of two letters signed by Eugene Bernstein in explanation of one of the charts [used by the government during the trial] has no merit. Bernstein was an accountant employed to represent defendant. During the course of the investigation he wrote one letter (dated February 3, 1955), on the letterhead of his accountant's firm, with reference to the holdings of defendant and his wife. He wrote a similar letter on the letterhead of defendant's attorneys in which his name is listed as tax counsel, giving similar information with reference to the transactions between defendant and The Jameson Construction Company. These statements from attorney and tax counsel are plainly competent. 246 F.2d at 570–571.

■ The third question presented on appeal is whether certain invoices and checks which Brodey made payable to nonexistent and fictitious parties were erroneously admitted into evidence by the District Court. Appellant required Brodey to pay cash for some of the scrap metal which it bought. In complying with this requirement, Brodey made out checks and invoices in the names of fictitious payees, cashed the checks, and delivered the proceeds to Dolleris. Brodey's secretary-treasurer, Harry Brodey, testified that it could have made out the checks (and presumably the invoices) to "cash" and have achieved the same result.[5]

In Bodnar v. United States, 248 F.2d 481 (6th Cir. 1957), checks made out to cash were offered to establish a taxpayer's receipt of certain unreported cash payments. We held them properly admissible as records made in the regular course of business under 28 U.S.C. § 1732 (1951). We find no reason to distinguish between checks payable to cash and checks payable to fictitious persons in the context of this case. The uncontradicted testimony of two of Brodey's officers shows that although the payees were fictitious, the transactions took place and Dolleris received the proceeds of the checks.[6]

■ Appellant's contention that the admission of these documents was error because of their tendency to associate him with a fraudulent scheme is also without merit. It is clear that this evidence was relevant because it was introduced to corroborate testimony that taxpayer, on many occasions, had asked for and received part of the sale price of scrap in cash. A trial judge has discretion to admit or refuse relevant evidence even though it may have a prejudicial effect on the jury. United States v. Craft, 407 F.2d 1065 (6th Cir. Feb. 20, 1969). We do not think that there was an abuse of discretion in this case.

■ The fourth question presented is whether there is sufficient evidence in the record to support the jury verdict of guilty. Appellant points out that he moved for acquittal at the conclusion of the Government's case and that this motion was denied. After introducing evidence in his own behalf, appellant failed

5. Record at 173–174.

6. Record at 164–232.

to renew this motion at the conclusion of the entire case or thereafter. As this court stated in United States v. Gosser, 339 F.2d 102 (6th Cir. 1964), cert. denied, 382 U.S. 819, 86 S.Ct. 44, 15 L.Ed. 2d 66 (1965), reh. denied, 382 U.S. 922, 86 S.Ct. 285, 15 L.Ed.2d 237 (1965):

> It is the settled rule that if a defendant at the close of the Government's case moves for judgment of acquittal on the ground that the evidence is insufficient to support a verdict of guilty, and after the motion is overruled, introduces evidence in his own behalf, he waives his objections to the denial of his motion for judgment of acquittal on that ground. 339 F.2d at 110.

Despite this rule, however, we could take cognizance of the contention that the evidence was insufficient if the submission of the case to the jury constituted plain error under Rule 52(b), Fed.R.Crim.P.

In this regard, appellant points out that if the cash receipts from scrap sales were included in D. & W.'s recorded cash receipts or were, even though unrecorded, deposited in D. & W.'s bank account, they were properly reported for tax purposes. He contends that there was insufficient evidence to allow the jury to find that the amounts in question were not accounted for in this manner. We determine, after careful review of the record, that this contention is without merit. There is testimony from which the jury could have found that these receipts were not included in D. & W.'s records of cash receipts and that only amounts which were so included were deposited in the company's bank account. The record also contains ample evidence to support the jury verdict as to the other elements of the offenses charged in the indictment.

We determine, finally, that the District Court's charge to the jury fairly stated the law of the case. Taxpayer failed to make a timely objection to the charge and his contention that it constituted plain error under Rule 52(b), Fed.R. Crim.P., is without merit.

The conviction is affirmed.