**UNITED STATES of America, Appellee,**

v.

**George E. MARTIN, Appellant.**

**No. 84–5328.**

United States Court of Appeals,
Fourth Circuit.

Argued June 7, 1985.

Decided Sept. 25, 1985.

Kathleen M. Gallogly, Asst. Federal Public Defender, Baltimore, Md. (Fred Warren Bennett, Federal Public Defender, Baltimore, Md., on brief), for appellant.

Steven A. Allen, Asst. U.S. Atty., Baltimore, Md. (J. Frederick Motz, U.S. Atty., Baltimore, Md., on brief), for appellee.

Before HALL and PHILLIPS, Circuit Judges, and GORDON, United States District Judge for the Middle District of North Carolina, sitting by designation.

JAMES DICKSON PHILLIPS, Circuit Judge.

George Martin appeals his conviction on three counts of willful income tax evasion in violation of 26 U.S.C. § 7201. He challenges the district court's voir dire of the jury venire, the admission of evidence concerning other illegal acts on his part, the court's instruction concerning the standard of knowledge necessary for willful tax evasion, and the court's summary of the evidence. We find no error and affirm the conviction.

I

George Martin was charged with willfully evading the payment of the full amount of income tax owing· by him in the years 1977, 1978, and 1979. Martin did not contest that he understated his income on returns filed for those years and stipulated at trial to the Internal Revenue Service's computation of his income and the taxes owing thereon.[1] The sole issue at trial was Martin's actual knowledge that the unreported income was taxable. Martin maintained in pretrial interviews that his unreported income was derived from gambling winnings and that he thought only winnings from a

---

1. The indictment alleged that Martin filed a return in 1977 showing income of $10,483 with tax due and owing of $532, whereas his income was actually $62,857.83 with a tax due of $20,-340.65. The 1978 return states income of $6,984 and a tax of $114 when Martin's income was actually $64,755.45 with a tax due of $18,000.20. In 1979, Martin stated his income to be $6,249 and owed no tax whereas he actually had income of $19,864.45 resulting in a tax of $2475.

wager at 300 to 1 or higher odds were taxable.[2]

Prior to trial Martin filed motions *in limine* in response to indications that the government would seek to introduce evidence that Martin's income was derived from "bookmaking" and from selling stolen chickens. Martin also sought to exclude statements made by an attorney who represented him in an IRS audit in 1979; the attorney allegedly admitted to the IRS that Martin had not reported income from selling chickens stolen from his employer, Holly Poultry.

On the first morning of trial the district court held a hearing on the motions *in limine*. Though the court initially believed that neither line of evidence would be properly admitted in the government's case-in-chief, it ruled that the government could inquire into the sale of chickens, without making reference to them as stolen, and into the statements by attorney Kalichman. The court made no ruling concerning evidence of Martin's bookmaking activities.

On voir dire of the jury venire, defense counsel requested a series of questions concerning jurors' gambling experience.[3] The court declined to ask the specific questions, instead questioning the jury more generally about gambling.[4] One potential juror asked to approach the bench and stated that he had strong opinions about taxation of gambling income. He was stricken for cause. Martin renewed his request for voir dire concerning jurors' gambling practices; the court again refused the request.

In the course of presenting its case-in-chief, the government elicited the testimony of IRS auditor Darlene Baker concerning attorney Kalichman's statements that Martin had made at least $30,000 from the sale of chickens. Virginia Ward, Martin's former mistress also testified that Martin had told her that he sold chickens and made $50,000 a year tax free. She stated that she had seen Martin leave a farmers' market with an envelope of money on several occasions.

Ms. Ward further stated that Martin occasionally played the numbers and bet on sporting events. She testified over objection that a woman had once called for Martin and that Martin had identified the woman as his employee in a bookmaking operation he was backing. Ms. Ward identified two documents as items she had taken from a nightstand in Martin's house and turned over to the IRS. A government expert witness testified over objection that the documents were bookmaking records, but handwriting exemplars indicated that Martin had not written the documents. Other bookmaking evidence included testi-

---

**2.** Martin said he held this belief because of the fact that casinos and racetracks must only withhold taxes and report the amount of winnings on bets placed at 300 to 1 or higher odds.

**3.** Martin's counsel proposed the following questions:

Has any member of the jury panel ever gambled at a race track or casino? If so, do you go to the track or casino more frequently than six times per year? (If the answer to the latter question is in the affirmative, counsel would request that the jurors be called to the bench to answer the following questions individually).

(a) How frequently would you estimate that you gambled, either at a race track or at a casino?

(b) When you go to either the track or casino, do you ever bet in amounts greater than $100 per bet? If so, what is the average amount of your bets?

(c) Have you ever received any information from the I.R.S., accountants or any other source regarding the taxability of your gambling income?

(d) What is your understanding of whether your gambling winnings are taxable?

**4.** The court asked the following questions:

Any member of the panel or members of your immediate family employed in any capacity at a race track?

Any member of the panel or members of your immediate family employed in any capacity with the state lottery or any lottery operation?

Do you know of any reason why you may be prejudiced for or against the Government or for or against the defendant because of the nature of the charges or otherwise?

Do you have any belief or opinion that the offenses with which the defendant is charged are unique in any respect in the sense that they should be pursued with extraordinary vigor, that they should not constitute an offense, or that they may carry penalties which you may consider improper?

mony from an associate of Martin's at Holly Poultry who stated that Martin had once said he had an interest in a small bookmaking operation. The government introduced other evidence that Martin was a frequent gambler.

Martin testified on his own behalf and, consistent with his pretrial interviews, denied any knowledge of the taxability of gambling income. He also denied any involvement in bookmaking or selling chickens. He presented several witnesses who testified that Martin gambled and sometimes placed bets for others but always paid out fully on any winning bet he had placed for another.

Following the court's summary of the evidence and instructions, the jury returned a verdict of guilty on all three counts and an active sentence of confinement was imposed. This appeal followed.

## II

We first consider Martin's challenge to the admission of evidence that he received income during the taxable years from bookmaking activities and from selling chickens. This, he says, was "other acts" evidence which, per Rule 404(b) of the Federal Rules of Evidence, should not have been admitted because the "other acts" were not established by clear and convincing evidence. Furthermore, he contends, its admission abused the discretion conferred by Fed.R. Evid. 403 which requires a balancing of probative value against the risk of unfair prejudice. Neither contention has merit.

Rule 404(b) is concerned with the possible irrelevance and high risk of unfairness of any evidence of a person's conduct, particularly his "bad acts," other than that directly in litigation issue. It therefore makes such evidence flatly inadmissible for the most marginally relevant and manifestly unfair purpose of proving the person's "character" in order to suggest propensity. But in a concession to the reality that for "other purposes," such evidence may be highly relevant (or possibly necessary) to prove a disputed issue, it authorizes admission for such purposes, including the specific purposes of proving disputed states of mind of the person. Where such other purposes do exist, protections against improper admission nevertheless remain in Rule 104 relevancy standards and in Rule 403's requirement that probative value yet be balanced against the risk of "unfair prejudice."

Some courts, concerned with the marginal relevance of such evidence even for purposes other than to prove "character," have imposed a further judicial requirement that only "clear and convincing evidence" of the commission of such other acts may be admitted for such purposes—particularly (and perhaps only) when the purpose is to prove a disputed state of mind. *See, e.g., United States v. Gustafson,* 728 F.2d 1078, 1083 (8th Cir.1984). Other courts, however, have thought that the general protections afforded by Rule 104's threshold relevancy standard and Rule 403's added requirement that even relevant evidence be assessed for possible unfair prejudice are sufficient safeguards against improper uses of such evidence. *See, e.g., United States v. Jardina,* 747 F.2d 945, 952 (5th Cir.1984).

■ While we have not before directly addressed the matter in these terms, we have not imposed any "clear and convincing evidence" standard in our applications of Rule 404(b). *See, e.g., United States v. Smith Paving & Grading Inc.,* 760 F.2d 527, 530–31 (4th Cir.1985); *United States v. Tate,* 715 F.2d 864, 865–66 (4th Cir.1983). Because we agree with the Fifth Circuit's approach, we decline to adopt such a requirement as urged by Martin in this case.

■ On this basis, we conclude that the evidence of income from bookmaking and chicken sales was properly admissible under Rule 404(b) and Rule 403. The evidence was not offered or submitted to the jury to prove Martin's "character"; but rather to prove that Martin received income that he was required to report but did not report, a requisite to his conviction under 26 U.S.C. § 7201. *See United States v. Mogavero,* 521 F.2d 625, 627–28 (4th Cir.

1975). While the amount of unreported income was stipulated, its reportability was not, and this could only be established by proof of its source. The evidence in question was manifestly relevant for this "other purpose" than proof of Martin's character. That the activity producing the income may have been illegal does not preclude admission of the evidence under Rule 404(b). *See United States v. Heyward*, 729 F.2d 297, 301 (4th Cir.1984); *cf. United States v. Simpson*, 709 F.2d 903, 907 (5th Cir.1983).

■ Neither can we find any abuse of the discretion imposed by Rule 403 to assess the risk of unfair prejudice before admitting relevant evidence, balancing against that risk the probative value of the evidence. Here, as indicated, the probative value was high, approaching if not reaching absolute necessity to prove an essential element of the charged offense. Given the fact that the court excluded any evidence that the chickens sold had been stolen, no possible "unfairness" attended the admission of evidence that income was realized from those sales. In the total balance, the probative value of the evidence of bookmaking income could not be thought outweighed by any countervailing "unfairness" resulting from its admission.

### III

■ There was no error in admitting the alleged bookmaking records and the expert testimony concerning those records. The records themselves need not come within an exception to the rule against hearsay. That the documents were bookmaking records and that they were found in Martin's constructive possession were the probative facts proven by evidence of the form and location of the records; the records were not therefore offered to establish the truth of the transactions recorded in them and would not be considered hearsay evidence. *See United States v. Wilson*, 532 F.2d 641 (8th Cir.1976) (drug transaction records).

The expert witness' testimony identifying the documents as bookmaking records was a necessary foundation for admitting the documents as they had no relevance otherwise. The district court was well within its discretion in admitting such expert testimony to aid the jury's understanding. *See* Fed.R.Evid. 702.

### IV

■ Martin also challenges the admission of evidence concerning attorney Kalichman's statements to the IRS on the grounds that the statements were hearsay not within an exception and that the statements were protected by the attorney-client privilege. We hold that the court properly admitted the evidence.

Kalichman's statement to the IRS auditor that Martin had made additional unreported income by selling chickens was made during the course of his representation of Martin pursuant to a power of attorney filed with the IRS. While the written power of attorney was limited to certain ministerial duties, Kalichman in fact dealt with the IRS auditors as Martin's representative. We agree with the district court that Kalichman was authorized to make statements concerning Martin's taxes in the scope of his representation. Kalichman did not exceed the scope of his authority by relating the existence of unreported income as he qualified his statement by asserting that Martin did not know the additional income was reportable. Though an attorney's admission of criminal liability might not be admissible against the client, *see* C. McCormick, *Evidence* § 267 at 643–44 (2d ed. 1972), this statement does not rise to that level. Kalichman did not admit liability due to the qualification noted. The statement was admissible under Rule 801(d)(2)(D) because Kalichman "was authorized to make, on the principal's behalf, any statements concerning the subject matter." *Restatement of Agency 2d* § 286 (1958). *See also United States v. Dolleris*, 408 F.2d 918 (6th Cir.1969); *United States v. Tuschman*, 405 F.2d 688 (6th Cir.1969).

■ Neither was the statement inadmissible because of the attorney-client privilege. Matters communicated to an attor-

ney by his client may be cloaked with the privilege, but the party asserting the privilege must establish the existence of the confidential relationship. *United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir.1982). To be privileged it must be intended that information given an attorney remain confidential; information given with the intent that it be used, for example, to compromise tax liability, is inconsistent with the confidentiality asserted. *See In re Grand Jury Proceedings,* 727 F.2d 1352, 1356 (4th Cir. 1984). To the extent such confidentiality was intended, Martin waived the privilege by authorizing Kalichman to represent him before the auditor. *See United States v. Mierzwicki,* 500 F.Supp. 1331, 1334 (D.Md. 1980).

## V

■ We next consider the district court's instructions on the knowledge element of willful income tax evasion. The court instructed the jury as follows:

> The element of knowledge that I have referred to may be satisfied by inferences that have been drawn from proof that a defendant deliberately closed his eyes to what would otherwise have been obvious to him.
>
> A finding beyond a reasonable doubt of a conscious purpose to avoid enlightenment would permit an inference of knowledge. Stated another way, a defendant's knowledge of a fact may be inferred from his willful blindness to the existence of a certain fact or facts.
>
> It is entirely up to you as jurors as to whether you find any deliberate closing of the eyes and the inferences from any such evidence. A showing of negligence or mistake is not sufficient to support a finding of willfulness or knowledge. You should note that if a person in good faith believes that he has paid all the taxes he owes, he cannot be guilty of an attempt to evade the tax. But if a person acts without reasonable grounds for belief that his conduct is lawful, then you must decide whether he willfully intended to evade the tax. You must decide

this issue of intent, namely, whether the defendant willfully attempted to evade the tax by considering, as I have indicated, all the evidence in the case that bears upon his state of mind.

(App. 352–53.)

This instruction is consistent with the principle that " 'the term "willfully" ... requires more than a showing of careless disregard of the truth.' " *United States v. Eilertson,* 707 F.2d 108, 110 (4th Cir.1983), quoting *United States v. Pomponio,* 429 U.S. 10, 12, 97 S.Ct. 22, 23, 50 L.Ed.2d 12 (1976). The instruction here read as a whole does not permit an inference of knowledge from a mere showing of careless disregard. The positive admonition to consider "conscious purpose" and "*deliberate* closing of the eyes" juxtaposed with the negative admonition that negligence or mistake is not sufficient, conveyed to the jury that knowledge may be inferred only from deliberate disregard for the truth.

We decline to follow *United States v. Callahan,* 588 F.2d 1078 (5th Cir.1979) which held a similarly worded instruction to equate willful blindness with reckless disregard. We believe that the deliberateness aspect of this instruction places the proper emphasis on intent required for willful tax evasion. Therefore, we hold that the court did not err in instructing the jury that knowledge could be inferred from willful blindness.

## VI

■ We find no merit to appellant's challenges to the court's voir dire of the jury and its summary of the evidence. Comparing the questions proffered by the defense to those actually put to the jury reveals that the defendant's concerns were adequately addressed by the district court. Accordingly we do not find that Martin's Sixth Amendment right to an impartial jury was infringed by an abuse of the district court's discretion to conduct voir dire under Rule 24 of the Federal Rules of Criminal Procedure. *See United States v. Brunty,* 701 F.2d 1375 (11th Cir.1983).

Similarly, though the district court's summary of the evidence might have been more balanced, we do not find that the judge went so far as to express an opinion of Martin's guilt. *Cf. United States v. Tello*, 707 F.2d 85 (4th Cir.1983). Accordingly we find no error in the court's summary of the evidence.

AFFIRMED.