902 F.2d 30
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Javier RAMIREZ-CARVAJAL, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Juan Manuel GOTAY, Defendant-Appellant.
 Nos. 88-5628, 88-5629.
 United States Court of Appeals, Fourth Circuit.
 Argued (No. 88-5629) June 7, 1989.
Submitted (No. 88-5628) Dec. 1, 1989.
Decided April 13, 1990.
As Amended April 24, 1990.
 
 Appeals from the United States District Court for the District of Maryland, at Baltimore. Alexander Harvey, II, Chief District Judge. (CR-88-45-H)
 No. 88-5628--J. Burkhardt Beale, Boone, Beale, Carpenter & Cosby, Richmond, Va., for appellant.
 Breckinridge L. Willcox, U.S. Atty., Lisa M. Griffin, Asst. U.S. Atty., Baltimore, Md., for appellee.
 No. 88-5629 Robert Leslie Miller, Jr., Bel Air, Md., argued, for appellant; Howard Avrum Miliman, D'Alesandro, Miliman & Yerman, Baltimore, Md., on brief.
 Lisa M. Griffin, Asst. U.S. Atty., Baltimore, Md., for appellee; Breckinridge L. Willcox, U.S. Atty., John V. Geise, Asst. U.S. Atty., Quincie Hopkins, Law Clerk, Baltimore, Md., for appellee.
 D.Md.
 SENTENCE VACATED AND REMANDED IN PART; AFFIRMED IN PART.
 Before WIDENER, MURNAGHAN and WILKINS, Circuit Judges.
 PER CURIAM:
 
 I.
 
 1
 Case No. 88-5629, United States v. Juan Manuel Gotay, was argued on June 7, 1989. Gotay had been consolidated for appeal with case No. 88-5628, United States v. Javier Ramirez-Carvajal. Ramirez-Carvajal's attorney, however, defaulted upon the appeal, so another attorney was appointed for him. This appointed attorney filed a brief pursuant to Anders v. California, stating that he discerned no error in the case, whereupon Ramirez-Carvajal filed a brief pro se, and his case was submitted on the briefs on December 1, 1989.
 
 II.
 
 2
 Juan Manuel Gotay appeals his conviction for conspiracy and possession with intent to distribute cocaine in violation of 21 U.S.C. Secs. 846 and 841(a)(1). Gotay contends that he was denied effective assistance of counsel and his case was prejudiced by the manner in which the court addressed his attorney during closing argument. He also contends that the court erred in instructing the jury. Finding no error, we affirm the judgment of the district court.
 
 
 3
 Gotay's conviction stems from a transaction which occurred on January 21, 1988, at Penn Station in Baltimore. Gotay claims that on the morning of the 21st he received a phone call at his New York area home from his uncle, Javier Ramirez-Carvajal, who lives in Houston, and who also was charged with Gotay in the same indictment. Ramirez-Carvajal asked Gotay to do him a favor and travel to Baltimore that day to pick up some packages for him.
 
 
 4
 Gotay claims Ramirez-Carvajal told him that the packages were "something personal, something for your aunt." Gotay told Ramirez-Carvajal that he had to be at his job, but Ramirez-Carvajal responded that he would pay Gotay more than he would earn at his job if he made the trip. Gotay was given no more information except to call Ramirez-Carvajal when he arrived in Baltimore.
 
 
 5
 Gotay agreed to the trip and travelled by train to Baltimore. Upon his arrival, he called Ramirez-Carvajal, who was in Houston. Ramirez-Carvajal told him to meet an individual named Angel Garcia, who, unknown to both men, was a government informant. When Garcia met with Gotay he was accompanied by Special Agent Henry Castro. The entire drug transaction was filmed on video tape by the government.
 
 
 6
 While the three sat on a bench outside a side entrance to the train station, Garcia placed a bag with eight packages containing a total of eight kilograms of cocaine near Gotay and asked the defendant to count the packages. Gotay counted eight packages. At this point, Castro made reference to the contents of the packages by asking Gotay how much money he was going to pay Garcia for the cocaine. Gotay answered that he preferred to make the transfer in a hotel.
 
 
 7
 Garcia and Castro then left Gotay on the bench with the bag containing the cocaine. Several minutes later, federal agents arrested Gotay. Gotay was taken to the Baltimore Customs House and read his rights. He voluntarily waived his rights and made a statement to the agents. Gotay admitted that he believed that his uncle made his living by importing illegal aliens and that he suspected that these packages might contain money. Gotay contends, however, that he had no idea that the packages contained cocaine. He said that his uncle had told him to hide the packages in his backyard and that he would come the next day to pick them up.
 
 
 8
 At trial closing arguments were limited to one hour. Near the end of the allotted time, the court warned Gotay's attorney that his time was about to expire and requested that he conclude his argument:
 
 
 9
 THE COURT: Mr. Citara, would you wind up, you are almost at the end of your time. You have about two more minutes.
 
 
 10
 MR. CITARA: I am sorry, your Honor.
 
 
 11
 Counsel spoke again, and then the court once again stated:
 
 
 12
 THE COURT: Your time is up, Mr. Citara. I warned you. You keep going into great detail. One more remark and that is it. The time is up.
 
 
 13
 MR. CITARA: Ladies and gentlemen, the bag remained on the bench. He didn't attempt to walk away with it. He didn't attempt to do anything with that bag, and nobody saw him with his arm on that bag.
 
 
 14
 THE COURT: Now will you, please, close. You can have one more sentence. You have gone over your time. We went into this very carefully yesterday, and you are going into a tremendous amount of detail. You will get one more sentence and that's it.
 
 
 15
 MR. CITARA: Your Honor, may I respectfully request more time?
 
 
 16
 THE COURT: No, you cannot have more time. We are not going to be here all day. We went over this yesterday and you agreed both sides are confined to one hour, and I warned you, and yet you continue on. I told you one more remark. You made four or five. You have one more sentence and then sit down. I don't like to cut people off in mid-sentence. Go ahead.
 
 
 17
 MR. CITARA: Ladies and gentlemen, there is certainly a lot of other factors you are going to have to consider but, it comes down to a reasonable doubt. It comes down to whether or not there is a reasonable possibility of what Mr. Gotay is saying is true and if you think there is a reasonable possibility that he didn't know it was cocaine and never intended to possess it after he found out it was cocaine, then you have to find Mr. Gotay not guilty. And I ask you to find him not guilty on all three counts.
 
 
 18
 Thank you.
 
 
 19
 At the close of the case, the court included an instruction to the jury as follows:
 
 
 20
 An act is done knowingly if done voluntarily and intentionally and not because of mistake or accident or other innocent reason.
 
 
 21
 With respect to an offense, such as those charged in this case, specific intent must be prove [sic] beyond a reasonable doubt before there can be a conviction. Intent ordinarily may not be proved directly, because there is no way of fathoming or scrutinizing the operations of the human mind but, you may infer a defendant's intent from of [sic] the surrounding circumstances. You may consider any statement made and done or omitted by a defendant, and all other facts and circumstances in evidence, which indicate his state of mind.
 
 
 22
 By intent knowledge ordinarily may not be proved directly because there is no way of fathoming or scrutinizing the operation of the human mind. But you may infer a defendant's knowledge from all the surrounding circumstances. You may consider any act or statement made and done or omitted by the defendant, and all other facts and circumstances in evidence, which indicate his state of mind. What a person does is frequently more indicative of his true state of mind than what he says.
 
 
 23
 The element of knowledge may be satisfied by inferences drawn from proof that a defendant deliberately closed his eyes to what otherwise would have been obvious. You may infer knowledge if you find beyond a reasonable doubt that a defendant refused to be enlightened or refused to take notice.
 
 
 24
 Stated another way, a defendant's knowledge may be inferred from a willful blindness to the existence of the fact. It is entirely up to you as to whether you find beyond a reasonable doubt any deliberate closing of the eyes and any inferences to be drawn from any such evidence. Evidence showing mere negligence or mistake is not enough to support a finding of willfulness or knowledge.
 
 The court also instructed the jury:
 
 25
 A defendant's intent to distribute drugs may be inferred from the quantity of drugs he possesses. The term distribute means to deliver a controlled substance to the possession of another person, which in turn means the actual constructive or attempted transfer of a controlled substance.
 
 
 26
 The jury later inquired whether an amount over five kilograms "automatically infers" an intent to distribute. The court told the jury there was no automatic inference, but again informed it that it might consider the amount of cocaine in determining whether there was intent to distribute.
 
 
 27
 The jury found Gotay guilty and he filed a timely notice of appeal.
 
 
 28
 Gotay contends that the court reprimanded defense counsel for running over his allotted time for closing argument, and that such improperly influenced the jury, interfered with effective assistance of counsel, and prejudiced his case. We begin our analysis of this issue by recognizing that a trial judge has broad discretion in the management of a trial. Quercia v. United States, 289 U.S. 466, 469 (1933). As the reviewing court, therefore, we must determine whether the district court abused that discretion.
 
 
 29
 The court's warnings and comments in this case came only in response to defense counsel's declining to abide by a previously allotted time limit, in the application of which the court showed no bias. Before rebuttal, the prosecuting attorney also was warned to stay within her remaining time. When her allotted time expired, the court asked her to "wind up" her closing argument also.
 
 
 30
 There was no prejudice in holding both parties to the same restrictions. See United States v. Robinson, 635 F.2d 981, 985-86 (2d Cir.1980), cert. denied, 451 U.S. 992 (1981). And, it is important in this case to note that the court in no way commented on the merits of counsel's argument, cf. United States v. Spears, 558 F.2d 1296, 1298 (7th Cir.1977), nor did the court make any comment that could be understood as imparting bias or partiality. See United States v. Parodi, 703 F.2d 768, 775 (4th Cir.1983). We conclude that the district court did not abuse its discretion with respect to the argument.
 
 
 31
 The defendant objects to the willful blindness instruction, but we find no error in that instruction. We have approved a similar "willful blindness" instruction in United States v. Cogdell, 844 F.2d 179, 181-82 (4th Cir.1988). Like the instruction in Cogdell, this instruction was balanced and did not permit an inference of knowledge from a mere showing of careless disregard or mistake. See United States v. Martin, 773 F.2d 579, 584 (4th Cir.1985).
 
 
 32
 The fact that the defendant in this case denied knowledge of the contents of the packages in the face of strong evidence of the criminal nature of the transaction justified the use of the willful blindness instruction. Cogdell, 844 F.2d at 181. Not only did Agent Castro inform Gotay of the contents of the bag, but, by his own admission, Gotay suspected that the transaction related to criminal conduct; so even from his point of view, he was just wrong in the kind of contraband the bag contained.
 
 
 33
 Furthermore, we find the court did not err in instructing the jury that an intent to distribute can be inferred from the quantity of drugs an individual possessed. United States v. Samad, 754 F.2d 1091, 1096 (4th Cir.1984). The instruction at issue adequately submitted the law on the subject to the jury.
 
 III.
 
 34
 Javier Ramirez-Carvajal was indicted in the same indictment as was Gotay on four drug-related counts charging the importation and distribution of cocaine. He was not tried on the indictment, however, and pleaded guilty to an information charging a violation of 21 U.S.C. Sec. 952(a) and 18 U.S.C. Sec. 2 for importing cocaine into the United States and aiding and abetting in the importation of more than 500 grams of cocaine. The indictment was dismissed as to him. As previously noted, his attorney filed a brief in accordance with Anders v. California, 386 U.S. 738 (1967), stating that, in his opinion, no meritorious issues existed on appeal. Carvajal filed a pro se brief alleging three grounds of error: (1) the trial judge was not qualified to exercise judicial power because he pays income tax; (2) because the trial judge was not qualified, the trial court lacked jurisdiction; and (3) the resulting sentence was illegal because it violated a plea bargain agreement relating to the quantity of cocaine involved.
 
 
 35
 We are of opinion the first two claims are so frivolous they do not merit discussion. And the third claim with respect to a sentence under the plea bargain agreement is probably of no more merit, because the agreement itself provides in terms that seven kilograms of cocaine were involved in the offense. But we do not decide that question, however, for another reason. The defendant and the government apparently have treated the sentence as correctly imposed under the sentencing guidelines. This is not to say, however, that the defendant has treated the length of the sentence as correct. Our examination of the record, however, discloses an order entered August 18, 1988, with reference to good time credits and parole eligibility, which recites that the defendant was sentenced for criminal conduct that occurred "prior to November 1, 1987."
 
 
 36
 While it is true that sentence was imposed on the defendant alternately under the guidelines and not under the guidelines depending on whether or not the Sentencing Reform Act was held unconstitutional, the sentencing order entered August 18, 1988, and filed August 22, 1988, imposed a guideline sentence on the basis of the validity of the Sentencing Reform Act, and alternately a sentence not under the guidelines on the basis of the invalidity of the Sentencing Reform Act.
 
 
 37
 Subsequently, the Sentencing Reform Act was held to be valid in Mistretta v. United States, 57 U.S.L.W. 4102 (1989). But the guidelines sentence contemplated by the district court and thus imposed may have been belied by the fact that the criminal conduct occurred prior to November 1, 1987, for which conduct a sentence could not be imposed under the guidelines. See United States v. Watford, No. 88-5197(L) (4th Cir. Jan. 16, 1990).
 
 
 38
 In view of the fact that the defendant and the government have treated sentencing under the guidelines as correct but do not take into account that the conduct for which the prisoner was sentenced, which occurred prior to November 1, 1987, might not be subject to sentencing under the guidelines, the conviction in this case is undisturbed, but the case is remanded for resentencing, if appropriate.
 
 
 39
 No. 88-5628, United States v. Ramirez-Carvajal--SENTENCE VACATED AND REMANDED FOR RESENTENCING
 
 
 40
 No. 88-5629, United States v. Gotay--AFFIRMED