# CIRCUIT COURT OF THE CITY OF RICHMOND

John Hoyt Gordon

v.

Newspaper Association
of America et al.

Case No. LF-768-3

BY JUDGE T. J. MARKOW

January 5, 2000

The parties appeared on Defendant Media General's Motion for a Protective Order and, although presented in memoranda instead of in a separate motion, the court will also consider Defendant Media General's Motion to Modify Subpoena. Likewise, the court will consider Plaintiff John Hoyt Gordon's request for relief in his memoranda as a Motion to Compel. Memoranda were received and argument was heard.

Media General seeks an order to protect the disclosure of information which it contends is undiscoverable because of attorney-client privilege and

the work product doctrine. Though present at the hearing, Newspaper Association of America, which caused the issue of the subpoena, took no position for the motion, neither arguing nor offering memoranda on the issue.

Plaintiff Gordon opposed the motion both in oral argument and on brief. Plaintiff contends that the information he wants is not covered by the privilege, and further, even if it applied, the privilege was waived by a partial disclosure. Plaintiff agrees that a memorandum dated May 11, 1999, from Mr. Frank McDonald of Media General's Human Resources Department to Mr. King Tower, an attorney with Williams, Mullen, Clark & Dobbins, is privileged presumably because Tower was representing Media General in this case at the time. Plaintiff requests that the court compel the production of the other documents in the privilege log, any communications between counsel for the NAA and employees of Media General, and any explanation for Gordon's discharge.

As to defendant's motion for a protective order to excuse defendant from answering questions in future depositions which solicit disclosure of attorney-client communications, the court cannot grant such a motion without more concrete facts. Therefore, the Motion for an order which would allow Media General to refuse to answer questions in deposition which cover privileged communications is denied, and defendant may raise the issue once such a question as that which defendant fears is asked in deposition or some other proceeding.

As regards plaintiff's motion to compel the disclosure of communications between NAA employees and Media General employees, plaintiff has not shown that it requested such disclosure through usual discovery and that defendant refused such a request. Furthermore, defendant does not contend that such communications are privileged. Until plaintiff makes such a request and a response is denied, a motion to compel such communications is premature. Therefore, plaintiff's Motion to Compel communications between counsel for the NAA and certain Media General employees is denied.

As far as plaintiff's Motion to compel an explanation for plaintiff's discharge, the plaintiff may conduct discovery consistent with the principles set forth in this opinion. The following facts are undisputed.

Gordon brings the underlying action after an employee of NAA accused him of sexual harassment, leading to termination of his employment by Media General. Preparing for trial on claims of defamation and tortious interference with contract, Both NAA and Gordon have requested to take the depositions of George L. Mahoney, General Counsel for Media General, and Frank McDonald, who works in Media General's Human Resources Department.

NAA's subpoena was served on McDonald. The subpoena demands Gordon's "personnel and employment records," including, *inter alia*, "complaints," "correspondence," "notations," "workers' compensation data," "private files," "unemployment compensation (VEC) materials," "all other recordations," and "any other data and information … without exception and omitting nothing from the records kept on this person." On its face, the sweeping language of the request would include materials involved in and created for a hearing before the Virginia Employment Commission reviewing Gordon's discharge.

Media General did produce numerous documents and also sent a Privilege Log, dated August 31, 1999, identifying thirteen documents which Media General would not disclose. The Log lists the documents in chronological order, each described by a date, a type (memo, e-mail, etc.), an author, a recipient, a general indication of the subject matter, and the privilege asserted by Media General, whether attorney-client privilege, work product protection, or both. Media General argues that the material sought in the remaining documents is protected from disclosure. Media General asserts that, by asking for every piece of paper that mentions or is related to Gordon, the subpoena is too broad and should be modified to exclude privileged information.

Furthermore, Media General states that both NAA and Gordon have indicated that they want to question Mr. George Mahoney, General Counsel for Media General, and Mr. Frank McDonald, an employee in Media General's Human Resources Department, in depositions about specific conversations the two had about Gordon and his discharge. Consequently, Media General would also like an order which would protect Media General employees from having to answer questions about communications between the corporation's counsel and staff.

Gordon contends that the information he seeks is not privileged because he does not want to know the legal advice which Mahoney gave McDonald. Rather, Gordon wishes to discover, as he frames it, "Mahoney's statements to McDonald about what defendants [NAA] said to him and McDonald's statements to Mahoney about what Gordon said to McDonald." Gordon hopes to trace the chain of transferral of the facts which surrounded the complaint of harassment and led to his termination.

As declared by the Supreme Court of Virginia and as is well established in common law, "[c]onfidential communications between attorney and client made because of that relationship and concerning the subject matter of the attorney's employment are privileged from disclosure, even for the purpose of administering justice." *Commonwealth v. Edwards*, 235 Va. 499, 508-09 (1988). One of the oldest recognized privileges, the attorney-client privilege

"is intended to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) (*quoting Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)) (internal quotations omitted).

Relevant to Media General, "the privilege exists between a corporation and its in-house attorney." *Owens-Corning Fiberglas Corp. v. Watson*, 243 Va. 128, 141 (1992) (*citing Upjohn*, 449 U.S. 383 (1981)). The communications protected are those between employees and in-house counsel which aid counsel in providing legal services to the corporation. *See Upjohn*, 449 U.S. at 395 (1981).

Clearly, the privilege exists for communications between Mahoney, in-house counsel for Media General, and McDonald, an employee of Media General. Of course, the protection from disclosure extends to communications between Mahoney and either McDonald or other Media General employees, where such communications assisted Mahoney in rendering legal advice and other services to Media General concerning the complaint of harassment and plaintiff's termination.

Plaintiff agrees that some communications are privileged, but contends that the privilege does not extend to facts or alleged facts that counsel communicates to an employee or that an employee communicates to counsel. Plaintiff argues that communications giving legal advice are privileged, but that the facts conveyed in attorney-client communications are not. Therefore, plaintiff reasons, the attorney-client communications between Media General's in-house counsel and the corporation's employees are not privileged as to those facts. However, plaintiff's argument misstates the rule.

In a concise statement of the rule, the U. S. Supreme Court explained:

> The protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, "What did you say or write to the attorney?" but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communications to his attorney.

*Upjohn*, 449 U.S. at 395-96 (1981) (emphasis in original) (*quoting Philadelphia v. Westinghouse Elec. Corp.*, 205 F. Supp. 830, 831 (E.D. Pa. 1962), *and citing State ex rel. Dudek v. Circuit Court*, 150 N.W.2d 387, 399 (Wis. 1967) ("[T]he

courts have noted that a party cannot conceal a fact merely by revealing it to his lawyer.")).

Plaintiff specifically seeks the *communication* of facts between the corporation's employee and the corporation's attorney in this case, not merely the facts themselves. Contrary to plaintiff's argument, those communications of fact, written or oral, are privileged where, as stated above, the communications help legal counsel to serve the corporation. *See Upjohn* at 395. Plaintiff may, through usual discovery, inquire into the facts within the knowledge of Mahoney and McDonald, but plaintiff may not seek the extent or the method of communications of those facts from Mahoney to McDonald or McDonald to Mahoney. The court's analysis in this case, however, does not end there.

Finding that the privilege is established, the court must address plaintiff's assertion that Media General waived the privilege over communications concerning plaintiff's discharge. In support, plaintiff identified and sampled from three documents and an excerpt of McDonald's testimony given at a Virginia Employment Commission hearing on May 19, 1999. Media General did not object to the accuracy of the quotations included in Gordon's argument and brief. Therefore, the court will consider the mentioned content in ruling on the issue of waiver.

The court will first address the last document which plaintiff claims waived the privilege. The document is only identified as an e-mail from Allen Walton, plaintiff's direct supervisor at the time the harassment complaint was made, and is described as including a date of transmittal, but no recipients. Plaintiff proffers that the e-mail describes a meeting attended by Walton, Mahoney, and McDonald while the three were all employees of Media General. However, plaintiff did not include any content in the e-mail, including the subject matter of the meeting. Therefore, the court lacks sufficient basis to determine whether the document can be considered as a waiver of the attorney-client privilege.

Next, the court considers plaintiff's argument that Media General waived the attorney-client privilege by disclosures made in both a letter authored by Media General's representative from the National Employer's Council and written to the VEC and in McDonald's testimony at the VEC hearing. Defendant maintains that the court should not ponder at all the information included in that material as the VEC received the information during a proceeding before that agency. Plaintiff included an excerpt of that material in his brief. However, the court will not summarize that material here due to § 60.2-623 of the Virginia Code which deals with proceedings before the VEC.

Paragraph B of § 60.2-623 states:

> Information furnished the [Virginia Employment] Commission under the provisions of this chapter shall not be published or be open to public inspection, other than to public employees in the performance of their public duties. Neither such information ... shall be used in any judicial or administrative proceeding other than one arising out of the provisions of this title ....

Furthermore, where the statute allows the VEC to disclose, the agency may do so only for specific purposes and only to provide information to certain public officials or employees. *See* Va. Code § 60.2-623 (1950).

Plaintiff is not a public official or employee, as contemplated by the statute, and this proceeding does not arise out of the provisions of Title 60.2. The statute unambiguously precludes the use of the letter written to the VEC and the admission of McDonald's testimony in this proceeding for the purpose of considering a waiver of the attorney-client privilege. Thus, the court rejects plaintiff's arguments with regard to any waiver effected by that material.

Finally, plaintiff offers an excerpt of a letter, dated February 26, 1999, from attorney Mahoney to David Brown, General Counsel of NAA, which confirms an earlier phone conversation. The letter is quoted in some detail and is not protected by Va. Code Ann. § 60.2-623. Therefore, the court will consider the letter to decide whether it waived Media General's privilege.

In Virginia, as in the federal courts, the attorney-client privilege is an evidentiary rule not defined by statute, but by the common law. *See, e.g., Commonwealth v. Edwards*, 235 Va. 499 (1988); *Owens-Corning Fiberglas Corp. v. Watson*, 243 Va. 128 (1992); *Seventh Dist. Comm. v. Gunter*, 212 Va. 278 (1971); *Cook v. Hayden*, 183 Va. 203 (1944); *Virginia-Lincoln Furniture Corp. v. Southern Factories and Stores Corp.*, 162 Va. 767 (1934); *Grant v. Harris*, 116 Va. 642 (1914). The Supreme Court has noted that "the privilege is an exception to the general duty to disclose ... and should be strictly construed." *Commonwealth v. Edwards*, 235 Va. 499, 509 (1988) (*citing* 8 Wigmore, *Evidence*, § 2291 at 554 (McNaughton rev. 1961)). The Court continues, "The privilege may be expressly waived by the client, or a waiver may be implied from the client's conduct." *Id.* The proponent of the privilege has the burden to show that it was not waived. *Id.* (*citing United States v. Jones*, 696 F.2d 1069 (4th Cir. 1982)).

Here, Media General failed to show that it did not waive the privilege by implication. The excerpt expresses Media General's regret for the underlying incident and informs Brown that plaintiff no longer works at Media General.

The excerpt continues that Media General carefully instructed plaintiff and all other employees that such conduct is "completely unacceptable in our workplaces." Mahoney's letter further states that Media General hopes that the NAA will interpret the "prompt action" to show Media General's "resolve that violations of [Media General's] policies simply will not be tolerated." The excerpt ends with a request that Brown "convey [Media General's] apologies to the young woman who was harassed."

The court finds that this letter from corporate counsel for Media General to outside, corporate counsel for the NAA is not a communication protected by the attorney-client privilege for the simple reason that the two attorneys did not have the proper relationship to give rise to the privilege at the time the communication was made. Such a relationship was not alleged by either party and the facts do not give rise to such an inference.

Therefore, the letter is a communication to a third party presumably authorized by the client, Media General, and waives the privilege. *See United States v. Martin*, 773 F.2d 579 (4th Cir. 1985). "Though an attorney's admission of criminal liability might not be admissible against the client ... this statement does not rise to that level." *Id.* at 583 (*citing* C. McCormick, *Evidence*, § 267 at 643-44 (2d ed. 1972); *Restatement (Second) of Agency* § 286 (1958); *United States v. Dolleris*, 408 F.2d 918 (6th Cir. 1969); *United States v. Tuschman*, 405 F.2d 688 (6th Cir. 1969)). Therefore, the court only need define the scope of the waiver in light of this communication to outside counsel.

In *Edwards*, the Supreme Court directed that among the considerations necessary when passing on the issue of implied waiver:

> regard must be had to the double elements that are predicated in every waiver, i.e., not only the element of implied intention, but also the element of fairness and constancy. A privileged person would seldom be found to waive, if his intention not to abandon could alone control the situation. There is always also the objective consideration that when his conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not. He cannot be allowed, after disclosing as much as he pleases, to withhold the remainder. He may elect to withhold or disclose, but after a certain point his election must remain final.

*Edwards*, 235 Va. at 509 (*citing* Wigmore § 2327 at 636).

*Edwards* involved a charge of Medicaid fraud. *See Edwards*, 235 Va. 499 (1988). Aided by counsel and an accountant, the defendant health care

provider prepared reports which it filed with the State Health Department's Division of Provider Reimbursement. During an investigation of the provider's reports, an Assistant Attorney General filed a *subpoena duces tecum* seeking documents which supported the information given in the Medicaid reports. The subpoena asked for, *inter alia*, "correspondence, workpapers, schedules, and analyses." *See id.* at 507.

The defendant health care provider made a motion to quash the subpoena, asserting attorney-client privilege and arguing that the documents sought were work product. *See* 235 Va. 499. Like the instant case, there was no express waiver in *Edwards*. However, unlike the instant case, the defendant in *Edwards* agreed with its opponent that it had impliedly waived the privilege because the State had "a right to know the basis of the figures it [was] asked to rely upon." *See id.* at 511. Arguing for limited waiver, the defendant health care provider believed that the State was not entitled, however, to documents which contained "notes and memoranda of consultations between the attorney and his client, as well as the attorney's analysis." The argument was that the material did not constitute "underlying detail" of the reports. The trial court, after *in camera* inspection of the documents, ruled some documents privileged and ordered others produced. The State appealed. *See id.*

On review, the Supreme Court began with the language above and, citing Wigmore, added that a client's offer of his or his attorney's testimony about any part of a communication to the attorney is a waiver "as to the whole of that communication, on the analogy of the principle of completeness." *See id.* at 510 (internal citations omitted). The privilege was waived not only to the transmitted data, but also to the "underlying details." However, the Court did not leave this broad language without qualification.

Compelling production of all communications which were "necessary to the preparation of the published document," the Court still excluded client communications in the non-privileged documents which were "not directly related to the published data." *See id.* at 511-14. Those communications had to be removed during *in camera* inspection before being disclosed. The waiver only applied to "the communications relating the data, the document, if any, to be published containing the data, all preliminary drafts of the document, and any attorney's notes containing material necessary to the preparation of the documents." *See id.*

In reviewing the six groups of documents which the Assistant Attorney General sought disclosed, the Court affirmed the trial court's rulings not to disclose any of them. Although *Edwards* dealt with waiver due to an expected disclosure of otherwise privileged information, the Court's application of the above principles shows that a partial disclosure of privileged information does

not waive the privilege as to the entire subject matter of the information revealed. See *id.* at 510-15.

The Court recognized an implied waiver, but protected some documents which dealt with the same subject matter as the disclosed material. Therefore, the rule for an implied waiver in Virginia cannot be that once a disclosure is made, the privilege is waived for all communications dealing with the same subject matter. Rather, Virginia law construes the waiver more strictly and applies the waiver only to communications of the "underlying details" of the disclosed material.

Applying the ruling in *Edwards* to the letter from Mahoney to Brown, the document waives the privilege over the information and underlying details which formed the basis for the letter, i.e. not merely the facts contained in the letter itself, but also all communications which were necessary to the preparation of the letter to Brown. More specifically, the communications which no longer enjoy the privilege include those relating the data in the letter, all preliminary drafts of the letter, and any attorney's notes containing material necessary to the preparation of the letter to Brown.

However, the letter does not waive the privilege to all attorney-client communications and work product concerning the matters in the letter. Any communications and material not directly related to the data published in the letter is to be redacted by defendants before production to plaintiff. Communications and material which is not directly related to the data published includes the attorney's legal assessments about the data.

To the extent the documents in the privilege log fulfill the criteria described in the above paragraph, defendant will disclose the documents to plaintiff. Should the parties have further disputes regarding the production of documents or the redaction of material, upon motion of one or both of the parties, the court will review documents *in camera* and make the requisite determinations. In light of this ruling, defendant's assertion of further work-product protection over other documents, though developed neither in argument nor on brief, is not necessary.

It is therefore ordered that defendant Media General's Motion for a Protective Order against future requests for responses is denied and the Motion to Modify the Subpoena is granted consistent with this opinion and is otherwise denied. It is further ordered that Plaintiff Gordon's Motion to compel all documents in the privilege log is denied except to the extent that defendant Media General is directed to produce the documents on the privilege log in the manner set forth in this opinion.

February 4, 2000

The parties appeared on Defendant's Motion to Reconsider and/or Clarification and memoranda were received and argument was heard on January 28, 2000. Except for the Newspaper Association of America, all parties appeared for argument.

Defendant asks the court to reconsider an order entered on January 5, 2000. The order granted plaintiff's Motion in part and compelled production of certain documents identified in a privilege log, over which Media General asserted both the attorney-client privilege and work-product protection.

Media General seeks reconsideration of the court's ruling and also suggests two factual discrepancies in the implicated order, which the court will dispense with quickly. First, the court finds that Media General, in fact, filed its Motion to Modify Subpoena Duces Tecum on August 27, 1999, as evidenced by the date stamp of the Clerk of the court. Second, the court notes that plaintiff was not alleged to be an employee of Media General, and the court makes no finding as to that fact.

Media General further seeks reconsideration of the court's ruling that Media General waived its attorney-client privilege. Applying the rule of *Commonwealth v. Edwards*, 235 Va. 499 (1988), the court compelled production of certain documents in Media General's privilege log. However, the court confined the scope of discovery to those documents which contained information and underlying details which formed the basis for an unprivileged letter written by Media General's General Counsel, addressed to General Counsel for the Newspaper Association of America and dated February 26, 1999. The court refers to its order of January 5, 2000, where it found that the letter constituted a waiver of the attorney-client privilege not only for the facts contained in the letter, but also communications which were necessary to the preparation of the letter. The order directed Media General to redact the documents so that when produced, they excluded communications and material not directly related to the document, more precisely, attorney's legal assessments about the data.

In support of its motion, Media General attempted to distinguish *Edwards* based on the fact that the *Edwards* defendant admitted waiver, while Media General does not, and that the attorney in *Edwards* intended to disclose the reports which formed the basis of waiver, where Media General implies it did not intend to disclose this letter. Both factual distinctions are meaningless.

Additionally, Media General offers *United States v. Rakes*, 136 F.3d 1 (1st Cir. 1998), and *United States v. O'Malley*, 786 F.2d 786 (7th Cir. 1986). Media General argues that the applicable rule includes that the attorney-client

privilege is not waived when a criminal defendant discloses facts to the FBI, regardless of whether the defendant confided the same facts in communications to his or her attorney. Media General further asserts that a party does not waive the privilege where he tells an uninterested party facts which were also communicated to his attorney.

The court finds that the two criminal cases defendant cites are not factually similar to the case at bar and implicate constitutional protections not at issue here. However, the court agrees with Media General that the policy concerns surrounding the attorney-client privilege merit reconsideration of the court's order.

Having found that reconsideration is appropriate in this case, the court notes plaintiff's objection that the case is moot because of a settlement reached with the Newspaper Association of America. The plaintiff argues that reconsideration would amount to an advisory opinion as the settlement ends this case with the Newspaper Association of America and, plaintiff continues, with Media General. However, no final order has been entered in the case as to either of the two defendants pursuant to Rule 1:1 of the Rules of the Supreme Court of Virginia. Therefore, reconsideration of this matter is proper as the case is still at issue before the court.

Generally, the attorney-client privilege may only be waived by the client and not the attorney. *Edwards* at 509. A court may find waiver where the proponent of the privilege does not meet his burden to prove the privilege was not waived. See *Id.* (*citing United States v. Jones*, 696 F.2d 1069, 1072 (1982)). Where the waiver is arguably made by implication, "regard must be had to the double elements that are predicated in every waiver, i.e., not only the element of implied intention, but also the element of fairness and constancy." *Id.* Considering fairness to both parties, the court has discretion to find the privilege was not waived where the disclosure was not made in order to gain an unfair advantage in litigation. *See Jones*, 696 F.2d at 1072 (*citing In re Sealed Case*, 676 F.2d 793 (D.C. Cir. 1982)).

The letter at issue in this case was written on February 26, 1999, a little more than a month before the Motion for Judgment was filed. The letter, as quoted by both parties in memoranda and as discussed in this court's order of January 5, 2000, does not appear to have been made in anticipation of any litigation, much less to gain an advantage in this action. Furthermore, the court has seen no evidence to show that Media General intends to use the letter to gain such an advantage. The attorney-client privilege is meant to be used as a shield from intrusion and not as a sword for manipulation of the truth. The court sees no attempt to manipulate the truth by the combined disclosure of this letter and the continued shield against disclosure of the related

194

communications whose production the court compelled in its order of January 5, 2000. Therefore, the court's earlier order is vacated.

It is therefore ordered that the court's order in this case dated January 5, 2000, is vacated in part to grant Defendant Media General's Motion to Modify Subpoena Duces Tecum and to reflect that the Motion to Modify Subpoena Duces Tecum was filed on August 27, 1999.